**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

SAMUEL LENOROWITZ, individually
and on behalf of all others similarly
situated,

              **Plaintiff,**

      **-v-**

MOSQUITO SQUAD OF FAIRFIELD
AND WESTCHESTER COUNTY,

             **Defendants.**

**Civil Case Number:  3:20-cv-01922-JBA**

---

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

---

**MARCUS ZELMAN, LLC**

**Yitzchak Zelman, Esq.**
**701 Cookman Avenue, Suite 300**
**Asbury Park, New Jersey 07712**
**Phone:     (732) 695-3282**
**Fax:       (732) 298-6256**
***Attorney for the Plaintiff***
***Samuel Lenorowitz***

i

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT……………………………………..……....………1

   A.  The Telephone Consumer Protection Act…………………………………2

   B.  The Supreme Court's Decision in *Barr v. AAPC*………………………………4

ARGUMENT……………………………………………………………………..6

  I.  THE SUPREME COURT HELD THAT ONLY THE GOVERNMENT DEBT EXCEPTION, NOT THE ENTIRE RESTRICTION ON ROBOCALLING, WAS UNCONSTITUTIONAL…………………………...10

   A.  The First Amendment Analysis In AAPC Shows That The Court Held Only That The Government-Debt Exception—Not The TCPA's Restriction On Robocalls—Was Unconstitutional………………………………………10

   B.  The Severability Holding In *AAPC* Shows That The Court Held Only That The Government-Debt Exception—Not The TCPA's Restriction On Robocalls—Was Unconstitutional……………………………………13

  II.  THE SUPREME COURT'S DECISION IN *AAPC* TO SEVER THE UNCONSTITUTIONAL GOVERNMENT-DEBT EXCEPTION, AND NOT INVALIDATE THE RESTRICTION ON ROBOCALLING, APPLIES RETROACTIVELY………………………………………………...16

   A.  The Supreme Court's Severability Determination Applies Retroactively Because Unconstitutional Amendments Are Void *Ab Initio*…………………..17

   B.  The Supreme Court's Severability Determination Applies Retroactively Under *Harper V. Virginia Department Of Taxation*. ……………………………..20

   C.  The Supreme Court In AAPC Intended Its Severability Determination To Apply Retroactively, Preserving TCPA Liability Between 2015 And 2020……..24

  III.  INDEPENDENT OF *AAPC*, INVALIDATING THE ROBOCALL RESTRICTION BETWEEN 2015 AND 2020 CONTRAVENES LONGSTANDING PRINCIPLES THAT GOVERN JUDICIAL REMEDIES FOR CONSTITUTIONALLY DEFECTIVE STATUTES……………………………………………..26

CONCLUSION……………………………………………………………30

## <u>TABLE OF AUTHORITIES</u>

*Abramson v. Federal Ins. Co.*,

    2020 WL 7318953 (M.D. Fla. Dec. 11, 2020)……………………………………………..9

*Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n*,

    923 F.3d 159 (4th Cir. 2019)……………………………………………………………….4

*Amara v. CIGNA Corp.*,

    No. 3:01-cv-2361 (JBA), 925 F. Supp. 2d 242 (D. Conn. 2012)…………………………7

*Arthrex, Inc. v. Smith & Nephew, Inc.*,

    941 F.3d 1320 (Fed. Cir. 2019)………………………………………………………...23

*Ayotte v. Planned Parenthood of N. New Eng.*,

    546 U.S. 320 (2006)…………………………………………………...…10, 19, 26

*Bank of Hamilton v. Lessee of Dudley*,

    2 Pet. 492, 7 L.Ed. 496 (1829)…………………………………………………13

*Barr v. Am. Ass'n of Pol. Consultants, Inc*,

    140 S. Ct. 2335 (2020)……………………………………………………*passim*

*Boisvert v. Carnival Corporation*,

    2021 WL 1329079 (M.D. Fla. Mar. 12, 2021)…………………………………2, 9

*Bonkuri v. Grand Caribbean Cruises, Inc.*,

    2021 WL 612212 (S.D. Fla. Jan. 19, 2021)………………………………………..9

*Buchanan v. Sullivan*,

    2020 WL 6381563 (D. Neb. Oct. 30, 2020)………………………………………..9

*Burton v. Fundmerica, Inc.*,

    2020 WL 4504303 (D. Neb. Aug. 5, 2020)………………………………………..9

*Califano v. Westcott*,

    443 U.S. 76 (1979)………………………………………………………….27

*Canady v. Bridgecrest Acceptance Corp.*,

    2020 WL 5249263 (D. Ariz. Sep. 3, 2020)………………………………………..8

*City of Ladue v. Gilleo*,

    512 U.S. 43 (1994)………………………………………………………….12

*DiStasio v. Edible Arrangements, LLC*,

    No. 3:16-CV-00538 (VLB), 2021 WL 1087499 (D. Conn. Feb. 1, 2021)…………………..9

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019)……………………………………………………14

*Duran v. La Boom Disco, Inc.*,
    955 F.3d 279 (2d Cir. 2020)………………………………………………………15

*Eberle v. Michigan*,
    232 U.S. 700 (1914)……………………………………………………………...17

*First Nat'l Bank of Boston v. Bellotti*,
    435 U.S. 765 (1978)……………………………………………………………...12

*Franklin v. Navient, Inc.*
    2021 WL 1535575 (D. Del. Apr. 19, 2021)……………………...……………9, 18, 19

*Frost v. Corp. Comm'n*,
    278 U.S. 515 (1929)……………………………………………………………...17

*Griffith v. Kentucky*,
    479 U.S. 314 (1987)………………………………………………………..22, 23

*Gunn v. Prospects DM, LLC*,
    2021 WL 1534234 (E.D. Mo. Apr. 19, 2021)……………………………...………8, 9

*Harper v. Va. Dep't of Taxation*,
    509 U.S. 86 (1993)………………………………………………………………21

*Heckler v. Mathews*,
    465 U.S. 728 (1984)……………………………………………………………...27

*Hossfeld v. Am. Fin. Sec. Life Ins. Co.*,
    2021 WL 1186526 (S.D. Fla. Mar. 29, 2021)…………………………………9, 15

*Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*,
    2020 WL 7346536 (M.D. Fla. Dec. 11, 2020)……………………………………..2

*Johansen v. LoanDepot.com LLC*,
    2021 WL 669329 (C.D. Cal. Jan. 31, 2021)……………………………………..9

*Komaiko v. Baker Techs., Inc.*,
    2020 WL 5104041 (N.D. Cal. Aug. 11, 2020)……………………………………..9

*La Boom Disco, Inc. v. Duran*,
    2021 WL 1520774 (U.S. Apr. 19, 2021)………………………………………15

*Lacy v. Comcast Cable Commc'ns, LLC*,

    2020 WL 4698646 (W.D. Wash. Aug. 13, 2020)……………………………………………..9

*Less v. Quest Diagnostics Inc.*,

    2021 WL 266548 (N.D. Ohio Jan. 26, 2021)……………………………………………………9

*Marks v. United States*,

    430 U.S. 188 (1977)…………………………………………………………………………6, 11

*Massaro v. Beyond Meat, Inc.*,

    2021 WL 948805 (S.D. Cal. Mar. 12, 2021)……………………………………………2, 7, 9

*McCurley v. Royal Sea Cruises, Inc.*,

    2021 WL 288164 (S.D. Cal. Jan. 28, 2021)…………………………………...6, 7, 8, 9

*Med. Ctr. Pharmacy v. Mukasey*,

    536 F.3d 383 (5th Cir. 2008)……………………………………………………………...18

*Miles v. Medicredit, Inc.*,

    2021 WL 872678 (E.D. Mo. Mar. 9, 2021)………………………………………………...8

*Piscottano v. Murphy*,

    No. 3:04CV682 (MRK), 2005 WL 1424394 (D. Conn. June 9, 2005)……………………7

*Regan v. Time, Inc.*,

    468 U.S. 641, 104 S. Ct. 3262, 3269 (1984)……………………………………………27

*Reynoldsville Casket Co. v. Hyde*,

    514 U.S. 749 (1995)……………………………………………………………………...21, 25

*Rieker v. National Car Cure, LLC*,

    2021 WL 210841 (N.D. Fla. Jan. 5, 2021)………………………………………………9

*Rivers v. Roadway Express, Inc.*,

    511 U.S. 298 (1994)………………………………………………...……………………22

*Robinson v. United States*,

    394 F.2d 823 (6th Cir. 1968)……………………………………………………………...14

*Schmidt v. AmerAssist A/R Sols., Inc.*,

    2020 WL 6135181 (D. Ariz. Oct. 19, 2020)……………………………………………9

*Shen v. Tricolor Cal. Auto Grp., LLC*,

    2020 WL 7705888 (C.D. Cal. Dec. 17, 2020)……………………………………………...8

*Stoutt v. Travis Credit Union*,

    2021 WL 996362021 (E.D.Cal., Jan. 12, 2021)……………………………………………..9, 15

*Trujillo v. Free Energy Sav. Co., LLC*,

    2020 WL 8184336 (C.D. Cal. Dec. 21, 2020)……………………………………8, 20

*United States v. Bell*,

    524 F.2d 202 (2d Cir.1975)………………………………………………………...7

*United States v. Booker*,

    543 U.S. 220 (2005)………………………………………………………...26

*United States v. Ford*,

    184 F.3d 566 (6th Cir. 1999)…………………………………………...14

*United States v. Miselis*,

    972 F.3d 518 (4th Cir. 2020)…………………………………………...14

*United States v. Sec. Indus. Bank*,

    459 U.S. 70 (1982)………………………………………………………22

*United States v. Smith*,

    945 F.3d 729 (2d Cir. 2019)……………………………………………14, 26-27

*Velazquez v. Legal Services Corp.*,

    349 F.Supp.2d 566 (E.D.N.Y.2004)……………………………………………7

*Welsh v. United States*,

    398 U.S. 333 (1970)………………………………………………………...27

*White Motor Corp. v. Citibank, N.A.*,

    704 F.2d 254 (6th Cir. 1983)…………………………………………...20

*Whittaker v. WinRed Tech. Servs. LLC*,

    2021 WL 1102297 (D. Ariz. Mar. 23, 2021)…………………………………………9

Statutes and Other Sources

137 Cong. Rec. 30,821 (1991)………………………………………………………3

47 U.S.C. § 227(b)(1)(A)(iii)………………………………………………………..3

47 U.S.C. § 608………………………………………………………………………3

Pub. L. No. 102-143, § 2, ¶3, 105 Stat. 2394 (1991)……………………………………………3

Pub. L. 114-74, Title III, § 301(a), 129 Stat. 588…………………………………………3

*Sutherland Statutory Construction* § 44:3 (7th ed. 2020)…………………………………………..21

**ARGUMENT**

This Memorandum of Law is submitted in opposition to the Defendant's Motion to Dismiss the Plaintiff's Complaint, based on the Supreme Court's decision last year in *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335 (2020). Defendant claims that the *Barr* decision rendered the Telephone Consumer Protection Act (the TCPA) unenforceable for any illegal calls made during the five-year period of 2015-2020, thereby handing the Defendant a free pass for its widespread violations of the statute. This position is a bit surprising, given the Supreme Court's express admonishment that "**our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction**." *Barr*, 140 S. Ct. 2355, fn12.

Specifically, in *Barr,* the Supreme Court considered whether a 2015 amendment to the TCPA – providing an exception to the robocall restrictions, but only for collection calls made to collect debts owed *to the government* – was constitutional. After finding that the exception was not constitutional, the Supreme Court severed that clause from the TCPA. And in doing so, the Supreme Court noted:

> although our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. **On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction**.

> *Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. at 2355, fn 12.

The Supreme Court thus expressly indicated that it was <u>not</u> giving out a free pass to callers who made calls prohibited by the TCPA. And, to be clear, Defendant did not make calls covered by this government debt exemption. Instead, the pre-recorded voice messages placed by the Defendant were unsolicited marketing calls, made in an effort to sell tick control services.

Defendant's position has been pushed by participants in the call center industry again and again and again, without much success.  In fact, while the Defendant claims that *two district courts*[1] have dismissed TCPA cases because of this unconstitutionality argument, the vast majority of courts – **23 decisions as of April 20, 2021** – have rejected this exact argument, including in this very District.  Defendant doesn't discuss this overwhelming weight of authority in its Motion, even though its own counsel has participated in some of those very cases.  *See e.g., Massaro v. Beyond Meat, Inc.,* 2021 WL 948805, at *8 (S.D. Cal. Mar. 12, 2021)(finding that "the *AAPC* opinion plainly contradicts PETA's assertion that the entire TCPA statute was struck down as unconstitutional" and that "*AAPC* did not divest federal courts of jurisdiction over TCPA claims concerning robocalls made between 2015 and the date of *AAPC*'s issuance").

For the reasons set forth below, it is respectfully submitted that the Court should reject the Defendant's attempt to distort *AAPC* as creating a 5-year gap in the TCPA's coverage that the Supreme Court clearly never intended.

## A.  The Telephone Consumer Protection Act.

The Telephone Consumer Protection Act is intended to protect consumers from receiving harassing, intrusive, unwanted, and all-too-common telemarketing calls.  Congress passed the TCPA in response to "a torrent of vociferous consumer complaints about intrusive robocalls."

---

[1] In its pre-motion Letter, Defendant claimed that <u>three</u> district court decisions supported its argument, citing to the additional holding of *Hussain v. Sullivan Buick-Cadillac-GMC Truck, Inc.*, 2020 WL 7346536 at *3 (M.D. Fla. Dec. 11, 2020). *See,* Docket 11, page 2.  Defendant was forced to quietly change this number for its actual Motion because the *Hussain* court subsequently reconsidered its holding, and concluded that the *Barr* decision does <u>not</u> preclude TCPA actions for calls placed during the 2015-2020 time period.  *See, Boisvert v. Carnival Corporation,* 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021)("Upon further reflection, the Court departs from its earlier opinion because, since the Court's Order in *Hussain*, every court faced with this same issue has concluded that a plaintiff may continue to bring § 227(b) claims post-AAPC…..The Court, having the benefit now of reading all of these cases, agrees with this majority view").

*AAPC*, 240 S. Ct. at 2344. At the time, more than 300,000 solicitors called more than 18 million Americans every day. TCPA, Pub. L. No. 102-143, § 2, ¶3, 105 Stat. 2394, 2394 (1991). As the Act's sponsor, Senator Hollings, emphasized: "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821 (1991). Congress found that banning robocalls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." TCPA, § 2, ¶ 12, 105 Stat. at 2394-95.

Enacted by Congress in 1991, the Act prohibits any party from placing robocalls or pre-recorded voice messages without the prior consent of the called party. *See,* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action in which a person may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." *Id.* § 227(b)(3)(B).

Twenty-four years later, in 2015, Congress enacted the Bipartisan Budget Act. Among other things, that Act amended the TCPA's restriction on robocalls, carving out an exception for robocalls "made solely to collect a debt owed to or guaranteed by the United States." Pub. L. 114-74, Title III, § 301(a), 129 Stat. 588.

The TCPA is also subject to an express severability clause. Section 227, which prohibits robocalls, is contained in Chapter 5 of Title 47. Chapter 5 states "If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances shall not be affected thereby." 47 U.S.C. § 608.

3

### B.  The Supreme Court's Decision in *Barr v. AAPC.*

In *Barr v. AAPC*, a group of political and polling organizations challenged the government-debt exception added by the 2015 Bipartisan Budget Act as "facially unconstitutional" under the First Amendment and argued that it rendered the entire robocall restriction unconstitutional. *See, Am. Ass'n of Pol. Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159, 161 (4th Cir. 2019*), aff'd sub nom. Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335 (2020).  The Fourth Circuit agreed that the government-debt exception was a "content-based loophole" to the restriction on robocalls that fails to satisfy strict scrutiny and therefore violates the Free Speech Clause. *Id.* at 170. The court, however, agreed with the government that the debt exception should be severed from the TCPA's general restriction on robocalls in light of Congress's direction that "if any part of the TCPA 'is held invalid, the remainder…shall not be affected.'" *Id.* at 171 (quoting 47 U.S.C. § 608). The Fourth Circuit concluded that "a severance of the debt-collection exemption will not undermine the automated call ban" because "for twenty-four years, from 1991 until 2015, the automated call ban was fully operative" without the government-debt exception. *Id.*

The Supreme Court affirmed. While there is no single majority opinion of the Court, six Justices concluded that Congress, in passing the government-debt exception, "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *AAPC*, 140 S. Ct. at 2343. Seven Justices, applying traditional severability principles, concluded that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute." *Id.* "As a result, plaintiffs still may not make political robocalls to cell phones, but their speech is now treated equally with debt-collection speech." *Id.* at 2344.

More specifically, Justice Kavanaugh announced the judgment of the Court and delivered an opinion joined by Chief Justice Roberts and Justice Alito, and joined in part by Justice Thomas, concluding that the government-debt exception failed strict scrutiny, but could be severed from the remainder of § 227(b)(1)(A)(iii) to preserve the general ban on robocalls. *Id.* at 2346-56. Justice Sotomayor concluded that the government-debt exception failed intermediate scrutiny, agreed that the provision was severable, and concurred in the judgment. *Id.* at 2356-57. Justices Breyer, Ginsburg, and Kagan would have concluded that the government-debt exception was constitutional but concurred in the judgment with respect to severability. *Id.* at 2362-63. Finally, Justice Gorsuch, joined in part by Justice Thomas, concurred in the judgment that the government-debt exception was unconstitutional, but for different reasons than those relied upon by Justice Kavanaugh, and dissented from Justice Kavanaugh's severability analysis and remedy. *Id.* at 2363-67.

Central to this case is the Supreme Court's decision in *AAPC* to sever the government-debt exception and not invalidate the entire 1991 robocall restriction. Justice Kavanaugh reasoned that when Congress includes a severability clause, as here, the Court should adhere to it. *Id.* at 2352. Even if there were no severability clause, he explained, the Court would apply the longstanding presumption of severability that "keep[s] courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional." *Id.* at 2351. "With the government-debt exception severed, the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Id.* at 2353.

Justice Kavanaugh further stated that the "Court has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a prior law." *Id.* "In those cases," he explained, "the Court has treated the original, pre-amendment statute as the valid

expression of the legislative intent." *Id.* "The Court has severed the exception introduced by amendment, so that the original law stands without the amendatory exception." *Id.* Even "when, as here, the Court confronts an equal-treatment constitutional violation, the Court generally applies the same commonsense severability principles." *Id.* at 2354. "[T]he Court typically severs the discriminatory exception or classification, and thereby extends the relevant statutory benefits or burdens to those previously exempted, rather than nullifying the benefits or burdens for all." *Id.*

At the end of the severability analysis, Justice Kavanaugh clarified that "no one should be penalized or held liable for making robocalls to collect government debt" after the effective date of the 2015 government-debt exception but before the entry of final judgment in *AAPC*, but that "[o]n the other side of the ledger, ***our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction***." *AAPC*, 140 S. Ct. at 2355 n.12.

## ARGUMENT

Defendant urges this Court to ignore Justice Kavanaugh's unambiguous statement – joined by two other Justices and not challenged by any of the Justices - that callers who had violated the TCPA during 2015-2020 are not simply being let off the hook. As Defendant would characterize it, this statement is merely "non-binding dicta". The courts have disagreed that this statement is merely dicta. For example, in *McCurley v. Royal Sea Cruises, Inc.*, the district court rejected the notion that Judge Kavanaugh's statement could be characterized as nonbinding dicta:

> When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.' " *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). However, "when an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

> In this case, one single rationale explains the result joined by seven of the Justices: All seven agree that the 2015 amendment should be severed and the liability of parties making robocalls who were not collecting a government debt is not negated. In fact, three of those seven would not have held the 2015 amendment to be unconstitutional at all, and they certainly agreed Defendant could be held liable. Therefore, the Court finds Justice Kavanaugh's statement is not dicta and must be followed by this Court.

*McCurley v. Royal Sea Cruises, Inc.*, 2021 WL 288164, at *2 (S.D. Cal. Jan. 28, 2021).

*See also, Massaro v. Beyond Meat, Inc.*, 2021 WL 948805, at *8 (S.D. Cal. Mar. 12, 2021)(agreeing that Justice Kavanaugh's footnote was not dicta, for these same reasons).

Even if Justice Kavanaugh's statement could be construed as mere dicta, Defendant's suggestion to simply disregard that statement is directly at odds with how the Second Circuit treats Supreme Court dicta, particularly in cases that are deemed to be close questions.  *See e.g., Amara v. CIGNA Corp.,* No. 3:01-cv-2361 (JBA), 925 F. Supp. 2d 242, 250 (D. Conn. 2012), aff'd, 775 F.3d 510 (2d Cir. 2014)("Without dwelling on the question of the formal scope of the Supreme Court's holding, this Court will follow clear statements of law issued recently by the Supreme Court, unless applying a rule announced in dicta to the facts before it would lead to a plainly erroneous result"); *Piscottano v. Murphy,* No. 3:04CV682 (MRK), 2005 WL 1424394, at *3 (D. Conn. June 9, 2005), aff'd, 511 F.3d 247 (2d Cir. 2007)("while judicial dictum is not binding it must be given considerable weight and cannot be ignored in the resolution of the question a court must decide"), quoting *United States v. Bell*, 524 F.2d 202, 206 (2d Cir.1975) (noting that where the Supreme Court "is providing a construction of a statute to guide the future conduct of inferior courts" such dictum "must be given considerable weight and cannot be ignored in the resolution of the close question we have to decide"); *Velazquez v. Legal Services Corp.*, 349 F.Supp.2d 566, 600 (E.D.N.Y.2004) ("Since this dicta was obviously designed to guide the district court ... the Court considers it 'judicial dictum,' rather than 'obiter dictum,' which it will follow").

Justice Kavanaugh's statement about not negating "the liability of parties who made robocalls covered by the robocall restriction" was plainly intended to serve a very specific purpose. Given the frequency at which TCPA claims are filed in the federal courts, and the thousands of pending TCPA cases nationwide, the Supreme Court clearly knew that lower courts would need to know how to address all of those cases in light of the Supreme Court's holding.  This statement – joined by several Justices and not otherwise contradicted by any sort of dissent – was clearly designed to guide the lower courts as they addressed these pending TCPA cases in light of *Barr. See e.g., Gunn v. Prospects DM, LLC*, 2021 WL 1534234, at *3 (E.D. Mo. Apr. 19, 2021)(rejecting motion to dismiss TCPA claim based on calls placed before 2020 and finding that "Justice Kavanaugh's statement signals the intent of the Supreme Court and what it would hold in future cases and, as such, may not be dismissed by a district court"); *McCurley,* 2021 WL 288164, at *3 ("Justice Kavanaugh's statement that the AAPC decision 'does not negate the liability of parties who made robocalls covered by the robocall restriction' if they were not made for the purposes of federal debt collection is not dicta because it was joined by six other justices. However, even if it was dicta, this Court finds it signals the intent of the Supreme Court and what it would hold in future cases and, as such, may not be cavalierly dismissed by a district court").

That guidance has not gone unheeded.  Since the issuance of the *Barr* decision, the overwhelming majority of courts across the country have continued to allow TCPA cases to move forward, despite the fact that the alleged calls were placed during this 2015-2020 period.  *See e.g., Miles v. Medicredit, Inc.*, 2021 WL 872678, at *3–4 (E.D. Mo. Mar. 9, 2021); *Shen v. Tricolor Cal. Auto Grp., LLC*, 2020 WL 7705888 (C.D. Cal. Dec. 17, 2020); *Trujillo v. Free Energy Sav. Co., LLC,* 2020 WL 8184336, at *5 (C.D. Cal. Dec. 21, 2020); *Canady v. Bridgecrest Acceptance Corp.*,  2020 WL 5249263, at *5 (D. Ariz. Sep. 3, 2020); *Komaiko v. Baker Techs., Inc.*, 2020 WL

5104041, at *5 (N.D. Cal. Aug. 11, 2020); *Abramson v. Federal Ins. Co.*, 2020 WL 7318953, at *3-4 (M.D. Fla. Dec. 11, 2020); *Stoutt v. Travis Credit Union*, 2021 WL 996362021 (E.D.Cal., Jan. 12, 2021); *Buchanan v. Sullivan,* 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020); *Burton v. Fundmerica, Inc.*, 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020); *Schmidt v. AmerAssist A/R Sols., Inc.*, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020); *Lacy v. Comcast Cable Commc'ns, LLC*, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020); *Less v. Quest Diagnostics Inc.,* 2021 WL 266548, at *1 (N.D. Ohio Jan. 26, 2021); *McCurley v. Royal Sea Cruises, Inc.,* 2021 WL 288164, at *3 (S.D. Cal. Jan. 28, 2021); *Rieker  v. National Car Cure, LLC*, 2021 WL 210841  (N.D. Fla. Jan. 5, 2021); *Bonkuri v. Grand Caribbean Cruises, Inc.*, 2021 WL 612212, at *1-3 (S.D. Fla. Jan. 19, 2021); *Johansen v. LoanDepot.com LLC*, 2021 WL 669329, at *3 (C.D. Cal. Jan. 31, 2021); *Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 2021 WL 1186526, at *3–4 (S.D. Fla. Mar. 29, 2021); *Whittaker v. WinRed Tech. Servs. LLC*, 2021 WL 1102297, at *2 (D. Ariz. Mar. 23, 2021); *Boisvert v. Carnival Corporation,* 2021 WL 1329079, at *2 (M.D. Fla. Mar. 12, 2021); *Franklin v. Navient, Inc.* 2021 WL 1535575, at *2 (D. Del. Apr. 19, 2021); *Gunn v. Prospects DM, LLC*, 2021 WL 1534234, at *3 (E.D. Mo. Apr. 19, 2021); *Massaro v. Beyond Meat, Inc.*, 2021 WL 948805, at *8 (S.D. Cal. Mar. 12, 2021).

The Honorable Judge Bryant similarly rejected the same arguments advanced by the Defendant here, and adopted the reasoning of these courts.  *See, DiStasio v. Edible Arrangements, LLC,* No. 3:16-CV-00538 (VLB), 2021 WL 1087499, at *4 (D. Conn. Feb. 1, 2021)(analyzing the *Barr* decision and holding that "What is clear is the Court's statement that the Court's decision would not 'negate the liability of parties who made robocalls covered by the robocall restriction' during the timeframe in which the exception remained operative"). The holdings of these 23

decisions are sound, and should not be rejected in favor of the two outlier holdings relied on by Defendant – one of which (the *Lindenbaum* case) is currently on appeal to the Sixth Circuit.

## I.   THE SUPREME COURT HELD THAT ONLY THE GOVERNMENT-DEBT EXCEPTION, NOT THE ENTIRE RESTRICTION ON ROBOCALLING, WAS UNCONSTITUTIONAL.

The Supreme Court in *AAPC* held that only the government-debt exception was unconstitutional and that "the entire 1991 robocall restriction should not be invalidated." *AAPC*, 140 S. Ct. at 2343. Defendant urges that the Court adopt a different view: that the entire robocall restriction was invalid between 2015 and 2020. But the Supreme Court never held that § 227(b)(1)(A)(iii)'s restriction on robocalling was the offending part of the statute.  In fact, the Court explicitly "disagree[d] with plaintiffs' . . . argument for holding the entire 1991 robocall restriction unconstitutional" and concluded only "that the 2015 government-debt exception created an unconstitutional exception to the 1991 robocall restriction." *AAPC*, 140 S. Ct. at 2348-49. The Court "sever[ed] [the statute's] problematic portion[]"—the government-debt exception—"while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 321 (2006).  The limit of the Supreme Court's constitutional holding in *AAPC* is thus clear from (a) the Court's First Amendment analysis and (b) the Court's decision to sever the government-debt exception. The Court only held that the government-debt exception was unconstitutional – *not* the calling restriction as a whole.

### A.   The First Amendment Analysis In AAPC Shows That The Court Held Only That The Government-Debt Exception—Not The TCPA's Restriction On Robocalls—Was Unconstitutional.

Five of the six Justices in *AAPC* that held that Congress impermissibly favored debt-collection speech in violation of the First Amendment applied strict or intermediate scrutiny only to the government-debt exception, not the robocall restriction as a whole.  In Part II of Justice

Kavanaugh's plurality opinion, which three other Justices joined, the subject of the First Amendment analysis was the government-debt exception—not § 227(b)(1)(A)(iii)'s restriction on robocalls. The Court reasoned that the "justification for the government-debt exception is collecting government debt" and that, while it's a "worthy goal," it does not pass strict scrutiny. *Id.* at 2347 (emphasis added).  The same is true of Justice Sotomayor's concurrence, where she concluded that the government-debt exception—not § 227(b)(1)(A)(iii)— failed intermediate scrutiny. *Id.* at 2356-57. In other words, there was no majority for the proposition that the entire robocall restriction violates the First Amendment.

Only Justice Gorsuch, in his separate opinion, took aim at the entire robocall ban. He argued that the government-debt exception renders the ban itself an unconstitutional restriction on speech. *See id.* at 2364-65.  But the controlling "holding of the Court" is that of the other five Justices.  They held only that the government-debt exception is unconstitutional, impermissibly *favoring* debt-collection speech over other speech.

The decision of Justice Kavanaugh, Chief Justice Roberts, Justice Alito, Justice Thomas, and Justice Sotomayor to limit their constitutional analysis to the government-debt exception, and not the robocall restriction, is not just a semantic preference—it reflects the scope of their constitutional holding.  It is black-letter law that the controlling holding of a divided Supreme Court decision is the "position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977).

And the proper scope of the Court's constitutional analysis was a major point of contention briefed by the parties. Seventeen pages of the respondent's brief in *AAPC* were dedicated to arguing why, when there is an unconstitutional content-based speech restriction, the Supreme Court should invalidate the restriction and not the exception. *See* Resp'ts' Br., *Barr v. AAPC*, 2020

11

WL 1478621, at *33-50 (Mar. 25, 2020). In response, the government defended the Fourth Circuit's decision to "describe[] that exception, rather than the automated-call restriction, as the constitutionally infirm provision." Pet'r's Reply Br., *Barr v. AAPC,* 2020 WL 2041669, at *10 (Apr. 24, 2020). The government explained that there are "'two analytically distinct grounds for challenging the constitutionality' of a content-based speech regulation under the First Amendment," and "'[o]ne is that the measure in effect restricts too little speech because its exemptions discriminate on the basis of [content].'" *Id.* at *9 (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 50-51 (1994)). "[A]n exemption from an otherwise permissible regulation of speech may represent a governmental 'attempt to give one side of a debatable public question an advantage in expressing its views to the people.'" *Ladue*, 512 U.S. at 51 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 785 (1978)).

Five of the six Justices that concluded there was a First Amendment violation "agree[d] with the Government" that the constitutional analysis could be limited to the government-debt exception itself. *AAPC*, 140 S Ct. at 2349; *see also id.* at 2356-57. They concluded "that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed." *AAPC*, 140 S Ct. at 2343. Justice Kavanaugh's plurality opinion recognized that "the robocall restriction with the government-debt exception is content-based," *id.* at 2347, but concluded that the problematic part of the statute is the government-debt exception that "favors speech made for collecting government debt over political and other speech." *Id.* at 2346. In other words, it was the *favoring* of certain speech, not the speech restriction itself, that violated the First Amendment.

**B. The Severability Holding In *AAPC* Shows That The Court Held Only That The Government-Debt Exception—Not The TCPA's Restriction On Robocalls—Was Unconstitutional.**

In addition to the First Amendment analysis, it is clear that the Supreme Court in *AAPC* held that the government-debt exception was unconstitutional but the robocall restriction was not because the Justices conducted a severability analysis—if the entire robocall restriction were unconstitutional, there would be no need to determine whether the government-debt exception was severable. Severance is based on the constitutional principle that "if any part of an Act is 'unconstitutional, the provisions of that part may be disregarded while full effect will be given to such as are *not repugnant to the constitution*." *Id.* at 2350 (quoting *Bank of Hamilton v. Lessee of Dudley*, 2 Pet. 492, 526, 7 L.Ed. 496 (1829)) (emphasis added). Severability requires sorting the constitutional from the unconstitutional. The point is to "refrain from invalidating more of the statute than is necessary" so as not to disrupt the enforcement of constitutional laws. *AAPC*, 140 S. Ct. at 2350.

By severing the unconstitutional exception and holding that "the entire 1991 robocall ban should not be invalidated," the Court made the legal determination that the robocall ban was *not* unconstitutional. *Id.* at 2343. Justice Kavanaugh made this explicit: After holding that "the entire 1991 robocall ban should not be invalidated," *id.*, he defined the term "invalidate" in a footnote as "a common judicial shorthand when the Court holds that a particular provision is unlawful and therefore may not be enforced against a plaintiff." *Id.* at 2351 n.8. By holding that the robocall ban should not be invalidated, the Court held that the robocall ban was *not* unconstitutional—only the *exception* was unconstitutional. Mr. Lenorowitz's claims therefore cannot be dismissed because Defendant's unlawful prerecorded voice messages falls under the surviving, constitutional part of § 227's restriction on robocalls.

If an unconstitutional part of a statute is severable, and a defendant's wrongful conduct violates the surviving part of the statute, then the defendant will still be liable. *See, e.g.*, *United States v. Smith*, 945 F.3d 729, 738 (2d Cir. 2019)(rejecting defendant's attempt to overturn a conviction of attempting to illegally export firearms based on First Amendment challenge, and finding that "An invalid part of a statute or regulation may be dropped if what is left is fully operative as a law, absent evidence that the Legislature would not have enacted those provisions which are within its power, independently of that which is not"); *Robinson v. United States*, 394 F.2d 823, 824 (6th Cir. 1968) (upholding defendant's conviction under the Federal Kidnapping Act because the Act's unconstitutional death penalty clause was severable from the remainder of the statute and defendant was not sentenced to death); *United States v. Ford*, 184 F.3d 566, 582-83 (6th Cir. 1999) (upholding convictions under gambling statute because even if the exception to gambling statute were unconstitutional, the exception would be severable); *United States v. Miselis*, 972 F.3d 518, 547 (4th Cir. 2020) (upholding defendants' convictions under Anti-Riot Act provision, even though last phrase of the provision is unconstitutionally overbroad, because that phrase is severable and defendants' "substantive offense conduct falls under the statute's surviving purposes").

This approach is also consistent with the Ninth Circuit's holding in *Duguid*. There, Facebook challenged the constitutionality of the TCPA's robocall ban as an affirmative defense to a class action. *See Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019), *cert. granted in part*, No. 19-511, 141 S. Ct. 193 (July 9, 2020) (mem.). The Ninth Circuit "sever[ed] the debt-collection exception as violative of the First Amendment" just as the Supreme Court did in *AAPC* shortly thereafter. *Id.* at 1157. The Ninth Circuit then "reverse[d] the dismissal of [plaintiff's] amended complaint" and "remand[ed] for further proceedings" to resolve claims based on robocalls made

14

after the 2015 enactment of the government-debt exception because § 227's general robocall ban remained "fully operative." *Id.* at 1156-57.

What is notable is what happened <u>after</u> the Ninth Circuit's *Duguid* decision.  In *Duran v. La Boom Disco, Inc.,* 955 F.3d 279 (2d Cir. 2020) the Second Circuit joined the Ninth Circuit in adopting a broad view of the types of automated telephone dialing systems (ATDS) that are encompassed by the TCPA.  The Supreme Court subsequently granted cert in *Duguid* in order to itself determine which dialing systems are encompassed by the TCPA.  On April 19, 2021, after adopting a narrow definition of that ATDS term, the Supreme Court remanded the *Duran* decision back to the Second Circuit in order to reconsider its decision on the ATDS issue in light of *Duguid*. *See, La Boom Disco, Inc. v. Duran,* 2021 WL 1520774 (U.S. Apr. 19, 2021).  However, the calls at issue in *Duran* were placed <u>in 2016 and 2017</u>.  *Duran*, 955 F.3d at 281.  If the TCPA's robocall restriction at § 227(b)(1)(A)(iii) is really invalid for any calls made between 2015-2020, there would be zero purpose for the Supreme Court to have remanded that case back to the Second Circuit for reconsideration of the ATDS issue.  Instead, the case would simply be dismissed outright, since all of the subject calls were placed during that time period, a time during which Defendant claims the TCPA is supposedly unenforceable.

Ultimately, "holding the entire robocall ban to be ineffective as to calls made between 2015 and 2020 would improperly construe *AAPC* as having invalidated the entirety of § 227(b)(1)(A)(iii), rather than just the government-debt exception, and thus would undermine the Court's central purpose in severing the statute." *Stoutt v. Travis Credit Union*, 2021 WL 99636, at *4 (E.D. Cal. Jan. 12, 2021). *See also, Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* 2021 WL 1186526, at *3–4 (S.D. Fla. Mar. 29, 2021)("According to Defendants, Plaintiff cannot assert claims based on conduct that occurred while the TCPA is invalid. However, Defendant's contention defies

ordinary rules of statutory severability and is contrary to a reasonable interpretation of the *Barr* opinion"). Severing an unconstitutional provision is intended to *preserve* the remainder of the underlying statute—not to invalidate it *sub silentio*, as the Defendant urges. For that reason, the Court should reject the Defendant's attempt to twist the holding and logic of the *AAPC* decision.

## II.     THE SUPREME COURT'S DECISION IN *AAPC* TO SEVER THE UNCONSTITUTIONAL GOVERNMENT-DEBT EXCEPTION, AND NOT INVALIDATE THE RESTRICTION ON ROBOCALLING, APPLIES RETROACTIVELY.

Regardless of the Supreme Court's analysis prior to severing the government-debt exception in *AAPC*, the Court's severability determination applies retroactively, rendering the robocall restriction constitutional and enforceable between 2015 and July 2020. The Court's severability determination was not—and in fact *could not*—be a prospective judicial fix. It was a judicial holding—an interpretation of federal law—that necessarily applies retrospectively. Therefore, the TCPA's restriction on robocalls has remained valid, without interruption, since 1991. This result makes far more sense than Defendant's suggestion, which is that the TCPA existed from 1991 to 2015 and then again from 2020 onward.

The Supreme Court's severability determination applies retroactively for three reasons. First, when, as here, an amendment renders an otherwise valid statute unconstitutional, the amendment is *void ab initio*, as if Congress had never enacted it, and does not affect, even temporarily, liability under the original statute. Second, the same basic principle—that unconstitutional parts of a statute are void when enacted—also applies more generally. Any decision to sever an unconstitutional portion of a statute is an interpretation of federal law that must apply retroactively to pending cases under *Harper v. Va. Dep't of Taxation*. Finally, if there were any remaining doubt, a majority of the Justices in *AAPC* intended to preserve the TCPA restriction on robocalling, both prospectively and retroactively.

Because these principles of retroactivity require the Supreme Court's decision in *AAPC* to apply retroactively, this Court should reject the Defendant's argument, and adopt the majority view of courts across the country that the prohibition on robocalls was valid and enforceable between 2015 and 2020.

## A. The Supreme Court's Severability Determination Applies Retroactively Because Unconstitutional Amendments Are Void *Ab Initio*.

The Supreme Court's conclusion that the government debt exception was invalid and severable preserved the underlying robocall restriction because when an amendment renders an otherwise valid statute unconstitutional, it is as if Congress had never enacted the amendment. "[A]n unconstitutional statutory amendment 'is a nullity' and 'void' when enacted, and for that reason has no effect on the original statute." *AAPC*, 240 S. Ct. at 2353 (quoting *Frost v. Corp. Comm'n*, 278 U.S. 515, 526 (1929)). The original statute "must stand as the only valid expression of the legislative intent." *Frost*, 278 U.S. at 527.

Because unconstitutional amendments are *void ab initio*, they will not affect—even temporarily—liability under the original, valid statute. For example, in *Eberle v. Michigan*, officers of a brewing company charged with making beer in violation of an 1889 prohibition on manufacturing alcohol argued that the prohibition was void because subsequent amendments in 1899 and 1903 created an exception for making wine and cider in certain counties, and that exception denied the beer brewers equal protection under the law. 232 U.S. 700, 704 (1914). The Court agreed that the amendments violated the Equal Protection clause but sustained the beer brewers' convictions under the original 1889 prohibition on manufacturing alcohol, reasoning that a constitutional statute's validity "could not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." *Id.* at 705.

The same principle applies here. Congress amended the TCPA in the Bipartisan Budget Act of 2015, adding the unconstitutional government-debt exception to the otherwise valid robocall restriction at § 227(b)(1)(A)(iii). Because the act of amendment is invalid, "the act is *void ab initio*, and it is as though Congress had not acted at all." *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 401 (5th Cir. 2008). Therefore, just as the defendants in *Eberle* could not escape liability for selling beer despite the unconstitutional exceptions for those selling wine and cider at the time, defendants here cannot escape liability for robocalling consumers despite the unconstitutional exception for government-debt collectors at the time.

A decade later, the Supreme Court in *Frost* reaffirmed the same underlying principle: that an unconstitutional amendment does not affect the validity and enforceability of the original, lawful statute. In *Frost*, the Supreme Court ruled that an amendment to an Oklahoma licensing statute, exempting certain corporations from making a showing of "public necessity" to obtain a cotton gin license, constituted an unconstitutional denial of equal protection. *See* 278 U.S. at 517, 526. The Court reasoned that "the amendment is void for unconstitutionality" and "an existing statute cannot be recalled or restricted by anything short of a constitutional enactment.' *Id.* at 526 (quoting *Davis v. Wallace*, 257 U.S. 478, 485 (1922)). When "the statute, before the amendment, was entirely valid" and "a different Legislature" passes an unconstitutional amendment, that amendment "is a nullity and, therefore, powerless to work any change in the existing statute." *Id.* at 526-27. The preexisting statute "must stand as the only valid expression of the legislative intent." *Id.* at 527.

The district court in *Franklin v. Navient, Inc.* 2021 WL 1535575 (D. Del. Apr. 19, 2021) recently applied these rules to the Supreme Court's severance of the government debt exemption, and explained why *AAPC*'s severance rule applies retroactively:

The Supreme Court has the power to declare law, not make it. The Constitution vests "[a]ll legislative Powers" in Congress. U.S. Const. art. I, § 1. Courts are limited to judging "Cases" and "Controversies." Art. III, § 2. As Blackstone explained, they are "not delegated to pronounce a new law, but to maintain and expound the old one." 1 William Blackstone, Commentaries *69. Their only power is "to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) (emphasis added). So federal courts cannot " 'change[ ]' the law"; they can only, in deciding cases, say what a law "has meant continuously since the date when it became law." *Rivers*, 511 U.S. at 313 n.12.

Because Supreme Court decisions clarify what the law "ha[s] always meant," their rulings apply to all open cases, even those whose facts predate the ruling. *Id.; Harper v. Va. Dep't of Tax'n*, 509 U.S. 86, 97 (1993). Otherwise, they would be "not ... adjudication but in effect ... legislation." *Griffith v. Kentucky*, 479 U.S. 314, 323 (1987) (quoting *Mackey v. United States*, 401 U.S. 667, 679 (1971) (Harlan, J., concurring in the judgment)). In short, judicial decisions apply retroactively. *Harper*, 509 U.S. at 94, 97.

That rule is equally true of severance decisions. Severance is just ordinary statutory interpretation. *See, Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 330 (2006). When a court finds a law unconstitutional, it finds that it is "void, and is as no law" from the day it is passed. *Ex parte Siebold*, 100 U.S. 371, 376 (1879). It never took effect as written. Often, the court must then decide what did take effect. Maybe no law did. But maybe Congress passed the law with a fallback rule. That is a question of statutory interpretation. The severance analysis answers it, telling us what the law has meant from the start.

AAPC's rule applies retroactively. When Congress amended the Act in 2015, it wanted to allow robocalls to collect government debt but ban other robocalls. In AAPC, the Court held that this combination of aims violates the First Amendment. If it violated the First Amendment in 2020, then it has violated the First Amendment since 2015. So Congress's ideal version of the Act was void from the start. It never became law.

Instead, some fallback rule kicked in right away. To cure the content discrimination, either the exception was void (so the Act covered all robocalls) or the exception became the rule (so it covered none). The Act has a severability clause. Thus, the AAPC plurality reasoned, Congress had picked the first rule. 140 S. Ct. at 2352. AAPC addressed only what the Act means going forward. But if the exception was void the day it was passed, and Congress's fallback rule was to nix it, then it never took effect. As Justice Kavanaugh put it, the exception was " 'not law' at all." 140 S. Ct. at 2351 n.8 (quoting Marbury, 5 U.S. at 177).

*Franklin v. Navient, Inc.* 2021 WL 1535575, at *2-3.

This longstanding principle that unconstitutional amendments are *void ab initio* also brings much needed stability to the law. As the Sixth Circuit explained in *White Motor Corp. v. Citibank, N.A.*, "[i]t has long been held that a statute which is unconstitutional does not repeal a prior statute on the subject when a contrary construction would create a void in the law which the legislative body did not intend." 704 F.2d 254, 261 (6th Cir. 1983). "The prior statute is 'revived' to avoid a chaotic hiatus in the law." *Id.* Defendant's proposed approach, in which the entire restriction on robocalling is unconstitutional and unenforceable for a five-year period, would create a "chaotic hiatus" in the law regulating robocalls that Congress never intended.

Thus, longstanding constitutional principles, as well as the need to avoid a five-year gap in robocaller liability that Congress never intended, requires that the unconstitutional amendment to the TCPA in the Bipartisan Budget Act of 2015, creating the government-debt exception, be treated as *void ab initio*, preserving without interruption liability under the TCPA of 1991. *See e.g., Trujillo v. Free Energy Sav. Co., LLC,* 2020 WL 8184336, at *4 (C.D. Cal. Dec. 21, 2020)("The *Frost* framework is applicable here. The 2015 amendment of the statute introduced the constitutionally offensive government-debt exception; as determined by the Supreme Court, the statute was sound before Congress introduced the errant exception. Under the reasoning adopted in AAPC 's severability analysis, the 2015 amendment was void ab initio, and the pre-amendment statute should be treated as the valid expression of legislative intent").

### B. The Supreme Court's Severability Determination Applies Retroactively Under *Harper V. Virginia Department Of Taxation*.

Contrary to the Defendant's characterization of severance as only a forward-looking judicial fix, the Supreme Court's decision to sever the government- debt exception is an interpretation of federal law that applies retroactively to all pending cases. "When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation

of federal law and must be given full *retroactive* effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993) (emphasis added).

The Supreme Court announced a new rule in *AAPC* that must apply retroactively under *Harper*. Specifically, the Supreme Court announced a rule that the government-debt exception in § 227(b)(1)(A)(iii) is invalid, but that the restriction on robocalling is not. It was a "constitutional decision[] of [the] Court," *Harper*, 509 U.S.. at 94, and an interpretation of § 227(b)(1)(A)(iii), *see* 2 Norman J. Singer, *Sutherland Statutory Construction* § 44:3 (7th ed. 2020) (severability is "essentially [a] question[] of statutory construction"). Therefore, the Court's severability determination applies retroactively here, regardless of whether Defendant's robocall violations "predate or postdate [the Court's] announcement of the rule." *Harper*, 509 U.S. at 97.

Although new rules of law apply retroactively to pending cases, there are "instances where that new rule, for well-established legal reasons, does not determine the outcome of the case." *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995). Specifically, "a court may find (1) an alternative way of curing the constitutional violation, or (2) a previously existing, independent legal basis (having nothing to do with retroactivity) for denying relief, or (3) as in the law of qualified immunity, a well-established general legal rule that trumps the new rule of law, which general rule reflects *both* reliance interests and other significant policy justifications, or (4) a principle of law, such as that of 'finality' . . . that limits the principle of retroactivity itself." *Id.* at 759.

None of these circumstances apply here to prevent the retroactive enforcement of the robocall restriction against Defendant. At the time that the Defendant made its unsolicited pre-recorded telemarketing calls in an effort to sell tick control treatments, the TCPA was

unquestionably in effect.  The Defendant just ignored it, and now tries to claim that the statute was unconstitutional all because of a since-severed exemption granted to collectors of government debt.  While Defendant claims that enforcing the statute against it would be unfair because the government debt exemption treated it differently, courts cannot declare different portions of a statute valid or invalid based on equitable concerns that might arise during a particular timeframe.

The Supreme Court has "prohibit[ed] the erection of selective temporal barriers to the application of federal law" because "the substantive law" should not "shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Harper*, 509 U.S. at 97 (brackets and quotation marks omitted). The *Harper* retroactivity rule is founded in the idea that courts have no "constitutional authority . . . to disregard current law or to treat similarly situated litigants differently." *Id.* Therefore, under *Harper*, Defendant cannot be permitted to disregard the law as interpreted in *AAPC* just because its robocall violations took place before *AAPC*.

Moreover, courts do not "prospectively fix" the law akin to a legislative amendment. Courts cannot act as legislatures and make "judicial fixes" to a statute that only apply moving forward. The *Harper* rule is based upon the "'basic norm[] of constitutional adjudication' . . . that 'the nature of judicial review' strips [courts] of the quintessentially 'legislat[ive]' prerogative to make rules of law retroactive or prospective as [they] see fit." *Harper*, 509 U.S. at 95 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 322 (1987)). "The principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 311-12 (1994) (quoting *United States v. Sec. Indus. Bank*, 459 U.S. 70, 79 (1982)). "[T]hat which distinguishes a judicial from a legislative act is, that [] one is a determination of what the existing law is in relation to some existing thing already done

or happened, while the other is a predetermination of what the law shall be for the regulation of all future cases." *Harper*, 509 U.S. at 107 (Scalia, J., concurring); *see also Griffith*, 479 U.S. at 322-23 ("Unlike a legislature, [courts] do not promulgate new rules.").

In its Motion, Defendant repeatedly cites to the Federal Circuit's holding in *Arthrex, Inc. v. Smith & Nephew, Inc.*, 941 F.3d 1320 (Fed. Cir. 2019), *cert. granted sub nom. United States v. Arthrex, Inc.*, 141 S. Ct. 549 (Oct. 13, 2020) (mem.).   In that case, the Federal Circuit held that Administrative Patent Judges ("APJs") qualified as "principal officers" that must be, but were not, appointed by the President with the advice and consent of the senate in violation of the Appointments Clause. *See id.,* at 1327.  The *Arthrex* court then applied severability principles and invalidated certain removal protections, rendering the APJs "inferior officers" that need not be appointed. *Id.* at 1336. Nonetheless, because unconstitutionally appointed APJs had presided over Arthrex's patentability hearing, the Federal Circuit required that, on remand to the agency, "a new panel of APJs must be designated and a new hearing granted." *Id.* at 1340.

*Arthrex* has little applicability here.  That case is about the retroactive effect of a court's holding on the validity of past *administrative decisions* made by an unconstitutionally appointed decision maker.  Moreover, *Arthrex* is distinguishable because, in those cases, the unconstitutional part of the statute (the removal provisions) directly applied to and tainted Arthrex's patentability hearing and the former CFPB Director's decisions. By contrast, here, the unconstitutional government-debt exception never applied to Defendant. Mosquito Squad is being sued under a different part of the statute—the robocalling ban—that was not invalidated, operates independently, and is entirely unaffected by the government-debt exception. There is no doubt that Defendant would be treated exactly the same for violations of the robocall ban that occurred before *AAPC* and that occurred after *AAPC*.

**C.  The Supreme Court In AAPC Intended Its Severability Determination To Apply Retroactively, Preserving TCPA Liability Between 2015 And 2020.**

If there were any doubt that unconstitutional amendments are *void ab initio* or that *Harper* applies, this Court should consider that a majority of the Justices clearly intended to preserve TCPA liability between 2015 and 2020. Because the Court's interpretation of federal law necessarily applies retroactively, *see supra* at Part II.B, the Supreme Court was required to consider—and did consider—the retroactive effect of its severability determination.

In *AAPC,* the Respondents repeatedly raised the very argument that defendants raise here: that invalidating only the government-debt exception, but not the entire restriction on robocalling, would "raise[] thorny questions of retroactive liability for any collector of government-backed debt who made automated calls before the Fourth Circuit's decision." Resp'ts' Br., *Barr v. AAPC,* 2020 WL 1478621, at *39.  The Respondents further argued that penalizing government debt collectors who made robocalls, relying on the government-debt exception, "would violate principles of fair notice," but that "exempting [them] (and only them) from liability would resurrect the content-based distinction that the Government's misguided remedial analysis seeks to eliminate." *Id.*  Thus, the Respondents argued, the only proper remedial solution is to invalidate the entire restriction on robocalls. *Id.*

The Supreme Court considered and rejected the argument that these retroactive liability concerns warrant invalidating the entire robocall restriction. A majority of the Justices held that only the government-debt exception should be invalidated, *see AAPC*, 140 S. Ct. at 2343, and, in footnote twelve, Justice Kavanaugh expressly accepted the consequences that the Court's decision would have on TCPA liability between 2015 and 2020, *id.* at 2355 n.12. After concluding that "the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction," Justice Kavanaugh stated:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case . . . . *On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.*

*Id.* (emphasis added).

The footnote's first sentence is based on the assumption—made by both parties in their briefing—that the fair notice doctrine is "a previously existing, independent legal basis (having nothing to do with retroactivity)" that may limit government-debt collectors' liability for robocall violations made over the last five years. *Reynoldsville Casket Co.*, 514 U.S. at 758-59. The footnote's second sentence—that the Court's decision does not negate liability of parties who made robocalls covered by the restriction—is simply an application of the well-established rule that the Court's interpretations of federal law apply retroactively, even though the fair notice doctrine may limit the enforcement of that law with respect to government-debt collectors. *See AAPC*, 140 S. Ct. at 2355 n.12.

Defendant's hypothetical, slippery-slope argument about Republicans being able to pass a robocalling exception for themselves – which would then allow only Republicans to make calls until the exception is struck down – makes no sense.  In those cases, a court would likely conclude that the exception undermines the stated justification for the rule and that the restriction had become an unjustified tool for speech suppression, as opposed to a valid regulation with an unconstitutional exception. *See, City of Ladue*, 512 U.S. at 50-51 (explaining speech restrictions can be under or over inclusive). This was an argument made—and rejected—in *AAPC. See,* 140 S. Ct. at 2348 ("Congress's addition of the government-debt exception…does not cause us to doubt the credibility of Congress's continuing interest in protecting consumer privacy.").

Footnote 12 of the *AAPC* decision does what it proclaims to do: It clarifies what the Court's "decision means." *Id.* Although Justice Kavanaugh only wrote for three Justices, four other Justices concurred in the judgment with respect to severability and did not dispute Justice Kavanaugh's characterization of the effect of their decision. Justice Kavanaugh's description should therefore be considered the type of guidance on the effects of a decision that the Supreme Court regularly provides. *See, e.g.*, *United States v. Booker*, 543 U.S. 220, 268 (2005) (explaining courts "must apply today's holdings . . . to all cases on direct review" and identifying prudential doctrines that may affect whether courts will need to hold new sentencing hearings). Even if Justice Kavanaugh's description of the effect of the Court's decision is not binding, it remains persuasive authority that cannot be ignored.

## III. INDEPENDENT OF *AAPC*, INVALIDATING THE ROBOCALL RESTRICTION BETWEEN 2015 AND 2020 CONTRAVENES LONGSTANDING PRINCIPLES THAT GOVERN JUDICIAL REMEDIES FOR CONSTITUTIONALLY DEFECTIVE STATUTES.

Even if the Supreme Court's constitutional holding and severability determination in *AAPC* were not controlling, longstanding principles that govern how to remedy an unconstitutional statute weigh heavily against eliminating all liability for TCPA robocall violations made between 2015 and 2020. The restriction on robocalling should not be retroactively invalidated as unconstitutional—or otherwise rendered unenforceable—for the past five years.

The remedy a court devises for an unconstitutional statute must be governed, first and foremost, by legislative intent. "[T]he touchstone for any decision about remedy is legislative intent, for a court cannot 'use its remedial powers to circumvent the intent of the legislature.'" *Ayotte*, 546 U.S. at 330. "After finding an application or portion of a statute unconstitutional, [the Court] must next ask: Would the legislature have preferred what is left of its statute to no statute at all?" *Id.* (citing cases). *See also, United States v. Smith*, 945 F.3d 729, 738 (2d Cir. 2019)("An

invalid part of a statute or regulation may be dropped if what is left is fully operative as a law, absent evidence that the Legislature would not have enacted those provisions which are within its power, independently of that which is not"), underline quoting *Regan v. Time, Inc.*, 468 U.S. 641, 653, 104 S. Ct. 3262, 3269, 82 L. Ed. 2d 487 (1984).

That is no less true where, as here, the constitutional violation involves unequal treatment. Constitutional violations caused by differential treatment can be eliminated (1) by extending the benefits or burdens to the exempted class or (2) by nullifying the benefits or burdens for all. *See, Heckler v. Mathews*, 465 U.S. 728, 740 (1984). But in choosing between nullification or extension of a benefit or burden, "a court should attempt to accommodate as fully as possible the policies and judgments expressed in the statutory scheme as a whole." *Califano v. Westcott*, 443 U.S. 76, 94 (1979) (Powell, J., concurring in part and dissenting in part). "It should not use its remedial powers to circumvent the intent of the legislature." *Id.* Courts must "measure the intensity of commitment to the residual policy and consider the degree of potential disruption of the statutory scheme that would occur by extension as opposed to abrogation." *Welsh v. United States*, 398 U.S. 333, 365 (1970) (Harlan, J., concurring in judgment).

Here, just as in *AAPC*, legislative intent strongly favors invalidating only the government-debt exception and preserving liability for robocall violations between 2015 and 2020. Congress included in the statute a severability clause stating, "If any provision of this chapter or the application thereof to any person or circumstance is held invalid, the remainder of the chapter and the application of such provision to other persons or circumstances *shall not be affected* thereby." 47 U.S.C. § 608 (emphasis added). The Defendant's argument essentially asks this Court to erase the entire TCPA restriction on robocalling for the last five years, in direct contradiction of Congress's explicit statutory direction.

Moreover, Congress would have preferred to extend the longstanding robocall ban retroactively, rather than to eliminate it for five years. That restriction "function[ed] independently . . . for 20-plus years before the government-debt exception was added in 2015," illustrating the strength of Congress's commitment to the robocall restriction. *AAPC*, 140 S. Ct. at 2353. To ignore Congress's policy objective, even just retroactively, "disrespect[s] the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted." *Id.* at 2356.

Eliminating liability for all TCPA robocall violations made in the last five years would substantially "disrupt[] the statutory scheme." *Welsh*, 398 U.S. at 365. The estimated national volume of robocalls was over 29 billion in 2016, 30 billion in 2017, and over 47 billion in 2018.[2] There were over 3,000 TCPA lawsuits filed in 2019 alone.[3]   Prohibiting enforcement of the TCPA's restriction on unwanted robocalling for the last five years creates a massive liability gap— one that will frustrate compliance moving forward, given that violators often change their practices in response to a costly lawsuit or FCC enforcement action.

Eliminating five years of TCPA claims also harms third-party actors who have relied on the statutory scheme. Consumers who have experienced annoying and incessant robocalls will be denied their right to damages and relief under the TCPA.  Consumers with pending lawsuits that have already dedicated significant time and resources in an effort to hold robocallers accountable will be blocked at the courthouse door. And the many corporations that *did* comply with the law,

---

[2]  *See* Federal Communications Commission, Report on Robocalls, 6 (2019), available at https://docs.fcc.gov/public/attachments/DOC-356196A1.pdf, last visited on April 20, 2021.

[3]  *See* Eversheds Sutherland, *Redial: 2019 TCPA Year-in-Review* (2019), available at https://us.eversheds-sutherland.com/NewsCommentary/Articles/228719/REDIAL-2019-TCPA-Year-in-Review-Analysis-of-Critical-Issues-and-Trends-in-TCPA-Compliance-and-Litigation, last visited on April 20, 2021.

undertaking additional costs and finding other, more burdensome ways to reach consumers, will be unfairly disadvantaged as their robocalling competitors face no consequences for years of violations.

Defendant's equitable argument in favor of eliminating all robocalling liability between 2015 and July 2020 is misplaced. Defendant claims that "liability for speech that allegedly violates an unconstitutional statute is irreconcilable with Supreme Court precedent and fundamental due process and equal protection principles." *See,* Docket 28-1, at 14. But, again, the *statute* was not found to be unconstitutional; only the government debt exemption was (which exemption never applied to Defendant in the first place).

Moreover, the equitable concern with retroactively applying the Court's severability determination – that government debt collectors would still be free of liability for those calls while everyone else wouldn't be - holds little weight. Any differential treatment of government-debt collectors would be based, not on speech, but on the fact that government debt collectors actually lacked fair notice of the law while other robocallers did not. Any differential treatment would be caused, not by the ongoing enforcement of a law that unconstitutionally favors certain speech, but by an entirely separate doctrine of fair notice that prevents government debt collectors from being punished for unlawful conduct when they had no notice that such conduct was unlawful. *See AAPC*, 140 S. Ct. at 2354 (recognizing that there are "independent constitutional barriers" to extension of benefits or burdens like due process and fair notice).

Defendant's arguments about equal protection may have been relevant to the initial severability determination in *AAPC*, but it cannot justify "selective temporal barriers to the application of federal law." *Harper*, 509 U.S. at 97. The potential for unequal enforcement of the TCPA against government-debt collectors in the past five years cannot dictate the retroactive

validity of § 227(b)(1)(A)(iii) because the Court cannot "permit the substantive law to shift and spring" depending on how separate doctrines may or may not be enforced to protect certain defendants, resulting in some differential outcomes. *Id.* (alteration omitted). Courts are not tasked with predicting how other cases will turn out and then adjusting the substantive law in their own case to safeguard against any potential inequitable enforcement.

Finally, any inequity caused by the fair notice doctrine is dwarfed by the inequity to consumers and law-abiding corporate competitors if robocallers are not held liable for five years' worth of TCPA violations. The need to preserve the statutory scheme enacted by Congress must remain paramount: "there is no magic solution to severability that solves every conundrum, especially in equal-treatment cases, but the Court's current approach . . . is constitutional, stable, predictable, and commonsensical." *AAPC*, 140 S. Ct. at 2356.

## CONCLUSION

In *AAPC,* the Supreme Court rejected the attempt by callers to invalidate the TCPA because of an unconstitutional provision that had been added to the statute in 2015.  Instead, the Supreme Court simply cut out that exemption as unconstitutional, treating it as if it had never existed. Defendant seeks to somehow pretend that the Supreme Court had gone the other way and actually invalidated the entire TCPA during the time that this exemption was in effect, but the Supreme Court clearly never did or said anything of the sort.  Instead, as the overwhelming majority of courts have agreed, the TCPA continues to allow called parties to seek redress for illegal calls they received during the past five years.  Finding otherwise would require the Court to ignore the Supreme Court's guidance that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction", something which is simply not appropriate in this action.

For these reasons, it is respectfully submitted that the Plaintiff is permitted to seek redress for the Defendant's violations of the TCPA and that the Defendant's Motion to Dismiss should be denied in its entirety.

Dated: April 20, 2021

Respectfully submitted,

By:    /s/ Yitzchak Zelman                 
Yitzchak Zelman, Esq.
Marcus Zelman, LLC.
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
Phone:        (732) 695-3282
Fax:            (732) 298-6256
*Attorney for the Plaintiff*
*Samuel Lenorowitz*