UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL LENOROWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MOSQUITO SQUAD FRANCHISING, LLC; MOSQUITO SQUAD OF FAIRFIELD AND WESTCHESTER COUNTY; and JOHN DOES 1-25,<br><br>Defendants. | Case No. 3:20-cv-01922-JBA<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF DEFENDANT MOSQUITO SQUAD OF FAIRFIELD AND WESTCHESTER COUNTY'S MOTION TO DISMISS** |

Defendant Mosquito Squad Of Fairfield And Westchester County ("MSFW") submits this reply brief in support of its motion to dismiss Plaintiff Samuel Lenorowitz's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and/or for failing to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  INTRODUCTION

The Court should dismiss Plaintiff's complaint because the TCPA was unconstitutional at the time of the alleged phone call at issue.  In this case, Plaintiff alleges that MSFW placed one prerecorded call to his cell phone in May of 2019.  Compl. ¶ 15.  Plaintiff alleges MSFW violated the robocall restriction provision of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).  However, the robocall restriction was unconstitutional from 2015 to July 2020, when the Supreme Court cured the constitutional defect by severing the debt-collection exception prospectively in *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S.Ct. 2335 (2020) ("*AAPC*").  All other provisions of the TCPA were left intact, including but not limited to its regulations on the Do-Not-Call registry, faxes, and calls to residential lines.

Two district courts have thoroughly examined the issues presented here and have concluded that they lacked subject matter jurisdiction over alleged violations of the robocall restriction that occurred before the Supreme Court severed the offending portions. The Court should follow those cases and dismiss this action. Any other interpretation would be against Supreme Court precedent and public policy. The district court cases cited by Plaintiff are unpersuasive and inconsistent with appellate precedent and principals.

For example, a party in power could theoretically pass an unconstitutional exception to the robocall provision—such as exempting calls made by certain religious, political or ethnic organizations—for as long as it took for the Supreme Court to invalidate such a provision. Once deemed unconstitutional, however, disfavored speakers would be liable for having violated the TCPA while favored organizations would be excused from liability up until the point of severance. The Supreme Court could not have intended such an unfair result. Nor could the Supreme Court have intended to set such a precedent.

For these reasons, the Court should dismiss this action for lack of subject matter jurisdiction and/or for failing to state a claim.

## II. THE COURT SHOULD DISMISS THIS ACTION BECAUSE THE TCPA WAS UNCONSTITUTIONAL AT THE TIME OF THE CALL

### A. The Supreme Court's Decision Bars This Action Despite Footnote 12

Plaintiff argues that *AACP* does not require the dismissal of this action because of footnote 12, which states that ". . . our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *AAPC*, 140 S.Ct. at 2355 n.12. However, in light of Supreme Court precedent, footnote 12 refers to final judgments where liability has already been determined, and not to pending actions. *See Lemon v. Kurtzman*, 411 U.S. 192,

197-98 (1973) (explaining that retroactivity of holdings depends upon vested rights, prior final determinations, and public policy in light of its previous application; noting non-retroactivity has been applied only in limited circumstances); *Chicot Cnty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 374 (1940) (noting the general rule of retroactivity "must be taken with qualifications" as to vested rights and "prior determinations deemed to have finality").  Though footnote 12 is admittedly ambiguous, based on public policy and prior Supreme Court precedent, it is most reasonably interpreted as referring to only *past judgments* where liability has already been determined, not to pending actions.

    For example, in *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749 (1995), more than three years after the plaintiff was involved in a collision with a truck, the plaintiff filed an action against the out-of-state truck owner and driver (the petitioners) in Ohio state court.  *Id.* at 751. Had the petitioners been residents of Ohio, Ohio law would have given the plaintiff only two years to bring her lawsuit.  *Id.*  However, because the petitioners were from out-of-state, a special provision of Ohio law tolled the running of the statute of limitations, making the lawsuit timely. *Id.*  While the action was pending, the Supreme Court held in another case that the Ohio tolling provision placed an unconstitutional burden upon interstate commerce.  *Id.*  Thus, the lower court concluded that "the tolling provision could not constitutionally be applied to the case, and dismissed the lawsuit as untimely."  *Id.*

    The court of appeals affirmed, but the Ohio Supreme Court reinstated the suit.  *Id.*  The Supreme Court granted *certiorari* to decide whether the federal Constitution permits Ohio to apply its unconstitutional tolling statute to torts that occurred before it held that the Ohio statute was unconstitutional.  *Id.* at 752.

The Supreme Court concluded that it does not and made clear that any remedy provided to the party bringing the original constitutional challenge must be provided to all other parties with cases that remained open. *Id.* at 758-59. The Supreme Court explained that a court may not create a remedy for a party before it and then declare that the remedy does not apply to any other party whose case remains open and whose claim arose under an unconstitutional law. *See id.* at 753-54; *see Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 86-87 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review . . . regardless of whether such events predate or postdate the announcement of the rule."); *McAnally v. Clark Cnty.*, 320 F. App'x 527, 528 (9th Cir. 2009) (concluding that the plaintiff was barred from prosecuting his claims based on a new Supreme Court ruling which the court concluded applied retroactively to the plaintiff in the pending case). Thus, footnote 12 cannot reasonably be interpreted to allow courts in pending cases to penalize defendants under a statute that was unconstitutional at the time of the alleged conduct.

**B.** **The Entire Robocall Provision Was Held To Be Unconstitutional**

Plaintiff contends that only the debt exception, and not the entire robocall restriction, was held unconstitutional by the Supreme Court. Plaintiff argues that the Supreme Court in *La Boom Disco, Inc. v. Duran,* 2021 WL 1520774 (U.S. Apr. 19, 2021), granted *certiorari* and remanded the case to the Second Circuit in order to reconsider its decision on the definition of an automatic telephone dialing system ("ATDS") in light of its decision in *Duguid v. Facebook, Inc.*, No. 19-511, 2021 U.S. LEXIS 1742 (Apr. 1, 2021). Plaintiff argues that the calls in *Duran* were made in 2016 and 2017 and therefore there would be no purpose for the Supreme Court to have remanded that case back to the Second Circuit for reconsideration if the robocall restriction was

invalid between 2015 and 2020.  *See* Opp'n at 15.  However, the Supreme Court is "a court of review, not of first view," and it "ordinarily will not decide questions not raised or litigated in the lower courts . . ."  *See McLane Co., Inc. v. E.E.O.C.*, 137 S. Ct. 1159, 1170 (2017).  The issue of whether the TCPA's robocall provision was unconstitutional between 2015 and 2020 was not before the Supreme Court in *Duran*.

Moreover, the Supreme Court's opinion in *AAPC* explicitly states that the *robocall restriction* is unconstitutional – not just the debt exception: "The initial First Amendment question is whether the *robocall restriction*, *with* the government-debt exception, is content-based. The answer is yes. . . . In short, the *robocall restriction with* the government-debt exception is content-based."  *AAPC*, 140 S. Ct. at 2346-47 (emphasis added).

In addition, the debt exception could not have been held to be unconstitutional standing alone ("unless such call is made solely to collect a debt owed to or guaranteed by the United States"), because it is incomplete on its own, and relies on the remainder of the robocall restriction to make it comprehensible.  *See Creasy v. Charter Commc'ns, Inc.*, 489 F. Supp. 3d 499, 506 (E.D. La. 2020) (noting that "an exception cannot be unconstitutionally discriminatory without reference to the broader rule in which it appears.").

Further, the First Amendment only prohibits "abridging the freedom of speech" and not the allowance of more speech.  *See* U.S. Const. amend. I ("Congress shall make no law . . . *abridging* the freedom of speech") (emphasis added).  The debt exception places no restrictions on speech and merely permits more speech by government debt collectors.  Thus, the *entire* robocall restriction was necessarily held unconstitutional, and not just the debt exception.

### C. The Supreme Court's Cure of Severance Applies Prospectively

Plaintiff argues that the cure of severance applies retroactively.  Plaintiff relies on *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86 (1993), which states "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review . . . regardless of whether such events predate or postdate the announcement of the rule." *Id.* at 86-87.  However, while the Supreme Court's rulings (e.g. deeming a statute unconstitutional) are retroactive, the cure of severance is prospective only.  *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760, 777 (D.C. Cir. 2020) ("While the principle of retroactive application requires that we afford the same remedy afforded the party before the court to all others still in the appellate pipeline, **judicial severance is not a 'remedy'; it is a forward-looking judicial fix**." (emphasis added)).  Further, "severance does not remedy any past harm—it only avoids continuing harm in the future.  It is only meaningful prospectively, once severance has occurred." *Id.* at 767.  Accordingly, the Supreme Court's cure of severance applies prospectively only.

### D. The Government-Debt Exception Was Not Void Ab Initio

Plaintiff argues that an unconstitutional amendment is null and void when enacted.  However, the government-debt exception cannot be treated as if it never existed.  If that were the case, government-debt collectors could be liable for calls made between 2015 and 2020.  The statute of limitations has not run on these claims.

However, because severance is prospective only, government-debt collectors are shielded from liability – based on the unconstitutional robocall provision – for calls made between 2015 and July 2020.  As explained by the *Lindenbaum* court:

> Although the plurality mentions that an unconstitutional statutory amendment is a "nullity" and "void," and therefore has "no effect on the original statute," **it does**

> **not follow that the result is that the amendment never existed in the first place.** The plurality could not have intended as such. Although *dicta*, **the plurality noted in footnote 12 that "no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment [in this case]…."** This statement would make no sense if the term "void" meant "void *ab initio*," because, in essence, footnote 12 indicates the statute *as amended* should be enforced with respect to government-debt collector robocalls made during this period. . . .

*Lindenbaum*, --- F. Supp. 3d ---, 2020 WL 6361915, at *5-*7 (emphasis added). Accordingly, the government-debt exception was not void *ab initio* and severance applies prospectively.

### E. <u>Some On-Point Cases Favor MSFW's Position</u>

Though Plaintiff contends that the Court should follow the district courts that have concluded that parties may continue to bring claims based on calls made during the time the robocall provision was deemed unconstitutional, those decisions are not persuasive or binding and are contrary to established Supreme Court precedent and public policy. They mostly rely on Justice Kavanaugh's dicta in footnote 12. They do not thoroughly analyze whether that dicta refers only to final judgments, which is apparent from the context and other Supreme Court authority on the issue. They do not sufficiently analyze or distinguish the Supreme Court and other appellate precedent holding that when a statutory provision is found unconstitutional this must be retroactively applied to pending cases where there has not already been a final judgment. They do not sufficiently address the public policy implications of their decisions. Indeed, some of the cases cited by Plaintiff barely provide any analysis supporting their conclusion.

Some district courts have *thoroughly* analyzed the precise issue presented here, including the Supreme Court precedent on retroactive application of rulings, and have agreed that the *entire* robocall restriction was unconstitutional until the Supreme Court severed the government debt exception. The court in *Creasy* explained that "in the years in which § 227(b)(1)(A)(iii)

permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, *the entirety of the provision was, indeed, unconstitutional*." *Creasy*, 489 F. Supp. 3d at 508 (concluding that "the unconstitutional *amended* version of § 227(b)(1)(A)(iii) is what applied to [defendant] at the time of the challenged communications at issue, and that fact deprives the Court of subject matter jurisdiction to adjudicate [defendant]'s liability with regard to such communications." (emphasis added)).

The *Lindenbaum* court concluded that with respect to robocalls made from 2015 through *AAPC*, the robocall restriction was unconstitutional and could not be enforced against *any* robocaller. *Lindenbaum*, --- F. Supp. 3d ---, 2020 WL 6361915, at *2. The court explained that it found "little, if any, support for the conclusion that severance of the government-debt exception should be applied retroactively so as to erase the existence of the exception" and that it could not "wave a magic wand and make that constitutional violation disappear." *Id.* at *5. Thus, the court found that "at the time the robocalls at issue . . . were made, the statute could not be enforced as written. And a later amendment to a statute cannot be retroactively applied. *Id.* at *7.

The Court should follow *Creasy* and *Lindenbaum* and dismiss this action. Though other district courts have disagreed, *Creasy* and *Lindenbaum* are more persuasive and better supported by appellate authority and public policy.

F.  **Plaintiff's Position Is Against Public Policy**

Importantly, public policy also favors MSFW's position. Plaintiff's interpretation would be against public policy, as any party in power could pass unconstitutional exceptions to speech restrictions to benefit themselves or others (e.g. certain favored political, religious, or ethnic

groups, for example) for as long as it took for the Supreme Court to invalidate them. Plaintiff, however, argues that in such situations "a court would likely conclude that the exception undermines the state justification for the rule and that the restriction had become an unjustified tool for speech suppression, as opposed to a valid regulation with an unconstitutional exception." Opp'n at 25.

Plaintiff's argument actually supports MSFW's point. For example, Congress could amend the robocall provision to state:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecord voice . . .
>
> (iii) to any telephone number assigned to a . . . cellular telephone service . . . **unless such call is made solely by the Republican National Committee to collect donations for charities.**

Per Plaintiff's argument, the exception would undermine the justification for the robocall provision, as opposed to the robocall provision being valid with an unconstitutional exception.

In any event, if Congress were to amend the robocall provision to add such a provision, under Plaintiff's position, the Republican National Committee would be free to make robocalls to collect donations for its selected charities for as long as it took for the Supreme Court to invalidate them. Once deemed unconstitutional, however, only disfavored speakers would be liable for having violated the unconstitutional law while the Republican National Committee would be excused until the point of severance. This would be the precedent under Plaintiff's position. The Supreme Court could not have intended such an unfair result.

Since government-debt collectors are shielded from past liability under an unconstitutional provision of the TCPA, it follows that MSFW also cannot be penalized in this

action for making a call in alleged violation of this unconstitutional provision.  Otherwise, the discrimination that the Supreme Court sought to cure would still exist.  As explained by Justices Gorsuch and Thomas, "a holding that shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate." *AAPC*, 140 S. Ct. at 2366.

### III.  CONCLUSION

For these reasons, MSFW respectfully requests that this Court dismiss Plaintiff's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and/or for failing to state a claim under Rule 12(b)(6) because the TCPA's robocall provision at issue in this dispute was unconstitutional at the time of the alleged call.

Date: May 5, 2021                             Respectfully submitted,

*/s/Shannon Z. Petersen*
Shannon Z. Petersen (phv11171)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, California 92130
Telephone (858) 720-7483
Email: spetersen@sheppardmullin.com

Joseph P. Sargent (Ct17779)
1595 Black Rock Turnpike
Fairfield, CT 06824
Tel: (203) 325-2323
Fax: (203) 659-7360
Email: josephpsargent@optonline.com

*Attorneys for Defendant Mosquito Squad of Fairfield and Westchester County*

## **CERTIFICATION**

I hereby certify that on May 5, 2021, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Shannon Z. Petersen*
Shannon Z. Petersen