UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL LENOROWITZ,<br><br>*Plaintiff*,<br><br>v.<br><br>MOSQUITO SQUAD OF FAIRFIELD AND WESTCHESTER COUNTY,<br><br>*Defendant.* | Civil No. 3:20-cv-01922 (JBA)<br><br>September 21, 2022 |

**RULING ON PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff Samuel Lenorowitz brings claims for damages and injunctive relief against Defendant Mosquito Squad of Fairfield and Westchester County under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, stemming from a ringless pre-recorded message delivered to his voicemail inbox. Plaintiff has moved to certify a class of approximately 9,186 others who received the same message. [Doc. # 56] Defendant opposes Plaintiff's motion. [Doc. # 68] For the following reasons, the Court GRANTS Plaintiff's motion for class certification.

**I.   Factual Background**

The background for this putative class action is a single ringless message that was sent to the voicemail inboxes of Plaintiff and Defendant's other customers. In June 2017, Plaintiff called Mosquito Squad seeking to sign up for its tick and mosquito control services. (Reich Dep., Pl's Ex. D, [Doc. # 56-7] at 12:17-25, 13:1-3.) He remained an active customer through September 2019. (Lenorowitz Dep., Pl.'s Ex. E, [Doc. # 56-8] at 22:4-7.) In May 2019, Defendant used an online platform "Slybroadcast," operated by MobileSphere, to send a recorded message to the voicemail inboxes of customers advertising its "Tick and Tube

Granular" services. (Reich Dep. at 23.) Plaintiff was among 9,186 customers who received the message. (*Id.* at 17:3-12; Mobarak Dep., Pl.'s Ex. F [Doc. # 68-7] at 26:9-21; Pl.'s Ex. B & C [Docs. ## 5-6].) The message stated:

> Hi this is Maria with Mosquito Squad. We sent you an email last week with details about our two supplemental tick control options, and I wanted to see if you had any questions. While tick tubes and granary treatments can be added to your current back pack service, tick tubes eliminate the nymph-stage tick underground and granular products increase the elimination rate of adult ticks above ground. Please call me back if you would like to discuss how we can go above and beyond to control ticks on your property. My number is 877-337-4415. Thank you and have a great day.

(*See* Pl.'s Ex. A [Doc. # 56-4].)

After Plaintiff received the voicemail message, he did not ask Defendant to stop but instead contacted Mr. Zelman, his neighbor and current counsel of record, to consult about the voicemail message on his personal cell phone. (Lenorowitz Dep. at 32:20-24; 34:15-18; 49:4-6.) Subsequently, Plaintiff commenced this lawsuit on behalf of himself and Defendant's other customers who received Defendant's message.

## II.     Legal Standard

A plaintiff moving for class certification must demonstrate that the proposed class meets the requirements of Rule 23(a) and (b). "In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of [Fed. R. Civ. P.] 23(a) of numerosity, commonality, typicality, and adequacy" of representation. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). If the requirements of Rule 23(a) are satisfied, a court "may then consider granting class certification where it 'finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Id.* at 202 (quoting Fed. R. Civ. P. 23(b)(3)).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir.2010). A court must "receive enough evidence, by affidavits, documents, or testimony" to resolve factual disputes relevant to a determination about whether the requirements of Rule 23 have been met. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006). The obligation to make such a determination "is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." *Id.* But the Court should avoid holding "a protracted mini-trial of substantial portions of the underlying litigation" as it makes its determination on class certification. *Id.*

### III. Discussion

#### A. Relevant Provisions of the TCPA

Plaintiff seeks to certify a class of individuals who he believes received the same ringless pre-recorded voicemail messages in violation of the TCPA. That statute provides: "[i]t shall be unlawful for any person within the United States"

> (A) to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States; [or]
>
> (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C § 227(b)(1)(A), (B).

### B. Class Certification

Plaintiff defines the putative class as:

> All persons within the United States, other than any of Plaintiff's counsel, who (1) received a pre-recorded voice message; (2) from or on behalf of the Defendant, placed via the Mobile Sphere platform, (3) marketing or promoting Defendant's services (4) during the time period of April 1, 2019 to the present.

(Pl.'s Class Cert. Mem. [Doc. # 56-1] at 6.) Additionally, he proposes that his litigation counsel Ari Marcus and Yitzchak Zelman, Esq. be appointed as class counsel. Through discovery, Plaintiff has determined that a potential 9,186 individuals will be members in the putative class, amply satisfying the numerosity requirement of Rule 23. (*Id.* at 7.) He claims that all these individuals received the same unsolicited pre-recorded voice message, satisfying the commonality requirement of Rule 23. (*Id.* at 8.) Moreover, Plaintiff argues that the typicality requirement is met because there is no conflict between his claims and those of the class. (*Id.* at 9 (citing *Est. of Gardner v. Cont'l Cas. Co.*, 316 F.R.D. 57, 70–71 (D. Conn. 2016)).) Plaintiff maintains that the proposed class counsel is adequate because both are qualified and there are no conflicts of interests between counsel and the putative class. (*Id.* at 12.)

Plaintiff also maintains that the requirements of Rule 23(b)(3) are satisfied. A class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) incorporates two requirements: (1) the questions of law or fact common to the class members predominate over any questions affecting only individual class members; and (2) "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

Plaintiff maintains both are met. First, "[f]or the reasons expressed [in support of the commonality and typicality requirements], it is respectfully submitted that this requirement is met here, particularly where the only issue in this action is whether the Defendant's use of these unsolicited pre-recorded voice messages violates the TCPA." (Pl.'s Class Cert Mem. at 13 (citing *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *4 (S.D. Cal. Apr. 9, 2014) ("The central inquiry is whether Wells Fargo violated the TCPA by sending text messages to the Class Members. Accordingly, the predominance requirement is met")).) Second, Plaintiff contends that "the class members' interests in litigating separate actions is likely minimal given their potentially limited means with which to do so and the prospect of relatively small recovery in individual actions." (*Id.* at 14.) Thus, Plaintiff maintains that a class action to address the repeated violations of the TCPA in the same manner is appropriate. (*Id.*)

Defendant opposes class certification on five grounds. First, Plaintiff is unable to demonstrate that standing exists for the entirety of the class. Second, Plaintiff's class definition is overbroad. (Def.'s Opp'n to Class Cert. at 8.) Third, the class is not ascertainable because individual issues predominate over common issues. (*Id.* at 9-13.) Fourth, Plaintiff is an inadequate class representative. (*Id.* at 17.) Fifth, a class action is not a superior avenue for putative members to pursue TCPA claims against Defendant. (*Id.* at 21.) After reviewing Defendant's arguments, the Court concludes that none are persuasive barriers to Plaintiff's proposed class certification.

### 1. Article III Standing

Defendant did not initially raise arguments based on standing in its opposition to class certification. However, after the Court inquired about standing of the class at oral argument, Defendant moved for leave to file additional briefing on the issue. (*See* [Doc. # 79].) The Court granted the motion, and both parties have now submitted additional briefing.

5

In a class action, "[e]very class member must have Article III standing in order to recover individual damages.") *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021). Standing requires plaintiffs to show they suffered concrete harm. To evaluate whether an intangible harm is sufficiently concrete, "both the history and the judgment of Congress play important roles," and it is "instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016). A "bare procedural violation, divorced from any concrete harm," is not a concrete harm, but Congress "may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.*

Defendant claims that the absent class members have not demonstrated concrete harm beyond a bare statutory violation, and other harm claimed would require individualized inquiry. (Def.'s Brief on Standing [Doc. # 82] at 1-4.) *TransUnion* considered whether the "mere existence of a misleading [] alert in a consumer's internal credit file" was a concrete injury if it was never disseminated to potential creditors, holding that it was not because it was not analogous to any real-world *de facto* harm. *TransUnion,* 141 S. Ct. at 2209-2210. Because it was not a concrete injury even though Congress had created a statutory cause of action to remedy that conduct, *see id.* at 2206, and because Plaintiffs rely on the statutory cause of action as the basis of their injury in fact, Defendant maintains they fail to plead a concrete injury.

Plaintiff disagrees that *TransUnion* "change[d] the holding or analysis of *Spokeo*," maintaining it only "reiterate[d] that 'every class member must have Article III standing in order to recover individual damages.'" (*See* Pl.'s Standing Brief, [Doc. #83] at 5.) (citation omitted). Plaintiff focuses on *Melito v. Experian Mktg. Sols., Inc.,* which applied *Spokeo* to hold that "a recipient of an unsolicited marketing message – without any *additional* injury – has

6

Article III standing to sue under the TCPA," (Pl.'s Standing Brief at 2), because "nuisance and privacy invasion[s]" are "the very harms with which Congress was concerned when enacting the TCPA," and "were traditionally regarded as providing bases for lawsuits in English or American courts," thus requiring no "additional" harm to be shown." 923 F.3d 85, 88, 93 (2d Cir. 2019); *see also Gorss Motels, Inc.* v. *Lands' End, Inc.*, No. 20-589-CV, 2021 WL 1915998 (2d Cir. May 13, 2021). Plaintiff also distinguishes *Drazen v. Pinto*, 41 F.4th 1354, 1356 (11th Cir. 2022), which rejected a class definition that included individuals who received only a single text message based on *TransUnion*, because in the Eleventh Circuit, unlike in the Second Circuit, a single text is insufficient to show concrete injury. 41 F.4th at 1362.

No persuasive distinction has been shown between this single unsolicited, prerecorded voicemail advertisement and the circumstances addressed in either *Melito* or *Gorss*; thus, Defendant's motion to deny class certification based on lack of standing is denied.

### 2. Overbreadth of the Class Definition

Defendant maintains that the class that Plaintiff seeks to certify is overbroad because "Plaintiff's definition includes all prerecorded calls to all types of telephone lines," (Def.'s Opp'n at 9), and the TCPA applies only to calls made to cell phones and residential telephone lines. (*Id.* citing 47 U.S.C. § 227(b)(1)(A)-(B)).) Plaintiff proposes redefining the class to include only those who received messages on a cell phone or residential landline, thus tracking the TCPA:

> a) All persons within the United States, other than any of Plaintiff's counsel, b) who received a pre-recorded voice message, **on either a cellular phone or a residential landline**, c) from or on behalf of the Defendant, placed via the Mobile Sphere platform, d) marketing or promoting Defendant's services e) during the time period of April 1, 2019 to the present.

(Pl.'s Class Cert. Reply [Doc. # 68] at 3); *see Strauch v. Computer Scis. Corp.,* 322 F.R.D. 157, 180-81 (D. Conn. 2017); *see also Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 114 (E.D.N.Y. 2011) (quoting James W. Moore et al., Federal Practice § 23.21[6]) ("The court may, in its

7

discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies.").

This revised class definition meets Defendant's challenge, and it shall be used in notices to the putative class members.

### 3. Ascertainability of the Class

Defendant next argues that the class is not ascertainable because three individualized inquiries predominate over the issues common to the putative class: (1) whether individual putative class members received the messages on cell phones or otherwise; (2) whether class members' phone numbers were registered or used as residential vs. business lines; and (3) whether the message was listened to by the consumer. (Def.'s Opp'n at 9-10, 12, 13.)

Class membership for a Rule 23(b)(3) class must be ascertainable at some point, although not necessarily as a requirement of certification. *In re Methyl Tertiary Butyl Ether Products Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). "An identifiable class exists if its members can be ascertained by reference to objective criteria," *id.*, and "when identifying its members would not require a mini-hearing on the merits of each case," *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015).

The Second Circuit has expressly declined "to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage" because such "an absolute standard" would be unworkable with the superiority and predominance requirements of Rule 23. *In re Petrobras Sec.*, 862 F.3d 250, 265, 267-78 (2d Cir. 2017). "Though a court may not ignore concerns about the manageability of a putative class action," a "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." *Id.* Defendant's arguments boil down to this: Plaintiff has not demonstrated that the putative class includes only people who were called on applicable phone lines, not phones used for

8

business purposes. However, Defendant's concern is not with the ascertainability of the class, but instead with the feasibility of ensuring the class members meet the class definition.[1]

Plaintiff proposes resolving ambiguities by subpoena to the phone companies or obtaining information by a questionnaire or affidavit as part of the class notice process:

> "Was your phone number _____ a residential landline, or a cell phone number, in April and May of 2019? Yes___ No___."

(Reply at 4-6, 9.)

As the affidavit or questionnaire process has been approved by courts handling this very issue in TCPA class actions, the Court adopts it for this case. *See e.g., Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ("[I]f issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, in any event, through a standardized and efficient claims process at a later stage").[2]

Finally, Plaintiff insists that the TCPA does not require that the message was actually listened to by each class member and evidence that the message was sent is sufficient. (Pl.'s Reply at 9.)

---

[1] Plaintiff represents that Defendant has identified a group of people called on their 'Mobile' phone numbers or serviced at a residential address "on an account not listed in a business name." (Reply at 4-6, 9.)

[2] *See also Bakov v. Consol. World Travel, Inc.*, 2019 WL 1294659, at *21 (N.D. Ill. Mar. 21, 2019)(agreeing with *Braver* that the TCPA class members "may self-identify by submitting documentation that they received a call by VVT, such as a phone bill or affidavit."); *Salam v. Lifewatch, Inc.*, 2016 WL 8905321, at *2 (N.D. Ill. Sept. 6, 2016)(rejecting a defendant's ascertainability challenge and certifying a TCPA class, noting that "noncustomer class members would also be able to self-identify through telephone records or affidavits where necessary").

The TCPA prohibits "mak[ing] any call . . . *using* . . . an artificial or prerecorded voice." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). In *Ybarra v. Dish Network, LLC*, 807 F.3d 635 (5th Cir. 2015), on which Defendant relies, the message mechanism involved a pre-recorded voice that played only when a call was picked up such that there was a "positive voice" response, which could be either a human voice or a recorded voicemail greeting. *Id.* at 637. The Fifth Circuit interpreted the TCPA text related to "using" an "artificial or prerecorded voice" or "any automatic telephone dialing system ['ATDS']," *id.* (citing 47 U.S.C. § 227), to be best understood as requiring that the artificial or pre-recorded voice "spoke," and "that making a call in which a prerecorded voice might, but does not, play is not a violation of the TCPA." *Id.*

Here, the technology for the pre-recorded message is that it is delivered successfully so long as the recipient has an operational voicemail inbox. (*See* Mobarak Dep. at 18:6-8 (explaining how the pre-recorded message using their platform is sent to a recipient: "It's as if I called you and you didn't answer; right? And it says hello. This is Mr. Peterson. Please leave a message after the tone. You play the tone. We deliver the message.").)

Thus, in this Court's view, it is sufficient under the TCPA for Plaintiff to demonstrate that a message containing a pre-recorded voice was successfully delivered to his voice mailbox. *See Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017); *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp.3d 817, 825 (N.D. Ill. 2016); *see also Warnick v. Dish Network LLC*, 2014 WL 12537066 (D. Colo. Sept. 30, 2014) (collecting cases) (noting that numerous courts have rejected the argument that the TCPA's prohibition on making a call also requires the "receipt" of a phone call).

### 4. Adequacy of Representation

Defendant challenges Plaintiff's adequacy as a representative "due to his personal relationship with his legal counsel, Mr. Zelman." (Def.'s Opp'n at 19.) Plaintiff and his counsel

are neighbors, attend the same synagogue, their children have attended school together, and on a couple of occasions Plaintiff's daughter provided babysitting services for Mr. Zelman's children. (*Id.*)

In determining the adequacy of class representation, courts seek to ensure (1) that the named plaintiffs' interests are not antagonistic to the interests of other class members and (2) that plaintiffs' counsel is qualified, experienced, and able to conduct the litigation. *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). Courts have found the adequacy requirement met even where the class representative and class counsel held a close personal relationship so long as the court is satisfied both will "fairly and adequately protect the interests of the class." *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 309 (S.D.N.Y. 2004) (finding the adequacy requirement met even where class representative was "close personal friend of his attorney"); *see also Gross v. GFI Grp., Inc.*, 2017 WL 3668844, at *3 (S.D.N.Y. Aug. 23, 2017) (finding no conflict of interest where lead plaintiff and counsel were related by marriage); *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 WL 193560, at *5 (E.D. Mo. Jan. 18, 2017) ("A friendship and shared passion for running do not create a conflict of interest."); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 337-38 (E.D. Mich. 2001) (finding employment of the named representative's son at class counsel's firm "insufficient to create a conflict of interest and thus render him an inadequate class representative"). Protecting the interests of the class includes ensuring that "plaintiff has no direct interest or likelihood of obtaining a portion of the attorney fees awarded to class counsel." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 42 (E.D.N.Y. 2008); *Malchman v. Davis*, 761 F.2d 893, 899 (2d Cir. 1985), *abrogated on other grounds by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) (affirming certification of class representatives who included the brother, mother-in-law, and personal friend of class counsel).

Here, notwithstanding Plaintiff and counsel's shared relationships and receipt of the same pre-recorded message, Defendant shows no clear conflict of interest, and Plaintiff's counsel has opted out of the class to avoid any appearance of potential conflict. (*See* Pl.'s Dep. at 36-40.) The Court is satisfied that Plaintiff and his counsel will adequately represent the class.

### 5. Superiority of a Class Action

Finally, Defendant disputes the superiority of a class action because (1) the TCPA provides sufficient incentives for plaintiffs to proceed individually in court, and (2) the crushing class damages far out of proportion to any harm suffered by Plaintiff." (Def.'s Opp'n at 20.)

Fed. R. Civ. P. 23(b)(3) requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and requires consideration of "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties of managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D). Superiority is often shown where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding. *Amchem Products, Inc.*, 521 U.S. at 623 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all."); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418, 436-37 (S.D.N.Y. 2009).

Here, the Rule 23(b)(3) factors favor certification. Damages for each individual in the putative class receiving one pre-recorded message, including Plaintiff, are statutorily limited

to $500. (Pl.'s Reply at 16.) Given the small statutory damages, even individuals who know they have legal recourse are less likely to sue on their own. Reliance on statutory damages awards alone to incentivize individual litigants would lead to one of two suboptimal results—either "needlessly clogging the courts with repetitious suits if many are filed, or rewarding some law violators with liability for only a slight amount of total damages if, as seems more likely, few suits are filed." *Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 26 (2d Cir. 2003) (Newman, J., concurring).[3]

Defendant's argument against certification because of the potentially "crushing" judgment against it is not a barrier to certification, as "there is no per se bar to resolving large numbers of TCPA claims by means of Rule 23." *Kaye*, 300 F.R.D. at 82 ("Even in a truly serious case, however, the remedy is not to decertify the class but to reduce the award.").

In the absence of any insurmountable difficulties in managing this case as a class action, the Court concludes that a class action is the superior method of fairly and efficiently adjudicating this case.

## IV. Conclusion

Accordingly, for the forgoing reasons, the Court GRANTS Plaintiff's Motion for Class Certification [Doc. # 56]. The parties are directed to submit proposed class notice documents and procedures within 14 days from the date this ruling is docketed.

IT IS SO ORDERED.

_____/s/_____<br>Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of September, 2022

---

[3] The parties provide no indication of other TCPA actions against Defendant arising from this prerecorded message. Thus, the present case will not interfere with any pending litigation in other forums.