UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL LENOROWITZ,<br><br>*Plaintiff*,<br><br>v.<br><br>MOSQUITO SQUAD OF FAIRFIELD AND WESTCHESTER COUNTY,<br><br>*Defendant*. | Civil No. 3:20-cv-01922 (JBA)<br><br>March 23, 2022 |

**RULING ON PLAINTIFF'S MOTION FOR APPROVAL OF CLASS NOTICE AND PROCEDURE**

On September 21, 2022, the Court certified a class comprised of Plaintiff Samuel Lenorowitz and approximately 9,186 others who received a single ringless pre-recorded message from Defendant Mosquito Squad of Fairfield and Westchester County seeking injunctive relief and damages under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. [Doc. # 84]. Plaintiff has now moved for approval of its proposed Class Notice Plan and Class Notice. [Doc. # 89]. Defendant argues that Plaintiff's proposed procedures are contrary to what the Court laid out in its prior Order, and improperly seek to re-open discovery; Defendant instead urges the Court to adopt its own proposed class notice and procedures. [Doc. # 91].

**I.   Background**

In its Order granting the motion to certify a class, the Court defined the class as:

a) All persons within the United States, other than any of Plaintiff's counsel, b) who received a pre-recorded voice message, on either a cellular phone or a residential landline, c) from or on behalf of the Defendant, placed via the Mobile Sphere platform, d) marketing or promoting Defendant's services e) during the time period of April 1, 2019 to the present.

(Order Granting Pl.'s Mot. for Class Cert. [Doc. # 84].) Plaintiff identified potential members of the class by submitting records from Mobile Sphere, a third-party that placed the calls on Defendant's behalf. In total, Mobile Sphere left 9,703 pre-recorded messages in

1

customer voicemails on Defendants' behalf; approximately 516 of these messages were not for telemarketing, but to obtain missing credit card information, and so are not within the alleged TCPA violations. (Pl.'s Mot. for Class Cert. [Doc. # 56-1] at 7-8.) The exact number of telemarketing calls versus non-telemarketing calls is not yet known, because Defendant has not produced unredacted call records that will "reflect the particular campaign associated with each prerecorded call." (Pl.'s Mot. for Approval of Class Notice [Doc. # 89] at 1-2.) The certified class is made up of approximately 9,186 people—9,703 total calls minus the 516 non-telemarketing calls and also Plaintiff's counsel, who received one of the unsolicited messages. *Id.* There were two categories of customers in Mobile Sphere's records; 8,235 of the 9,186 non-telemarketing calls were made to numbers listed as "Mobile" numbers in Defendant's records, and the remaining 951 calls were made to numbers identified as being "Landline" numbers. (*Id.* at 2.)

Defendant and Plaintiff both filed their proposed class notice procedures on October 26, 2022. The Second Circuit denied Defendant's motion for interlocutory appeal of the Court's class certification order on February 16, 2023.

## II.     Discussion

### A.     Method of Notice

Rule 23(c)(2)(B), which governs class notice contents and procedures, requires "the court [to] direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Plaintiff proposes sending individual mailed notice to each member of the class using the addresses maintained by Defendants, and to issue the notice via email as well to ensure that class members who may have changed address receive notice. (Pl.'s Mot. for Approval at 1.)

Defendant has no objection to the method of notice; the Court approves Plaintiff's proposed method of notice to class members under Rule 23(c)(2)(B)

B.     **Content of Notice**

Fed. R. Civ. P. 23(c)(2)(B) sets out the following requirements for the contents of the class notice:

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Plaintiff represents that his proposed notice meets all the requirements of Rule 23(c)(2)(B), and the Court agrees. The introductory paragraph introduces the nature of the action as a "class action lawsuit filed against Mosquito Squad of Fairfield and Westchester County" for allegedly violating "the Telephone Consumer Protection Act by placing prerecorded voicemails regarding its services to people who did not provide prior, express, written consent." (Proposed Class Notice [Doc. # 89-4] at 1.) The notice defines the class by quoting this Court's order certifying the class in its answer to Frequently Asked Question 3, and provides more information on the class claims, issues, or defenses both in the introductory paragraph and in the answers to Questions 1 and 2, which provide the case name, a brief overview of the relevant facts and statutory basis for the claims, and an explanation of why it was certified as a class. (*Id.* at 1.) Question 7's answer explains that class members have a right to hire their own lawyer; Question 6's answer explains both the right to be excluded, the repercussions of choosing exclusion, and the method for doing so. (*Id.* at 2.) The answer to Question 5 explains that if class members opt not to be excluded, they will be bound by the judgment and lose the right to file an independent lawsuit. (*Id.*)

Defendant's only objection to the content of the Notice is that it asserts Class Counsel's contact information should not appear on the notice, and that instead, the Claim Administrator's contact information should appear there. Defendant's request to remove Class Counsel's contact information from the Class Notice is without merit. *See Parker v. City*

3

*of New York,* No. 15 CV 6733 (CLP), 2017 WL 6375736, at *13 (E.D.N.Y. Dec. 11, 2017) (requiring inclusion of the contact information for Class Counsel, including an address, phone number, and email address, on the Class Notice.) However, Plaintiff is instructed to add the Claim Administrator's contact information as well, both at the bottom of each page and in the section titled "How do I get more information?" on the second page.

With modification, the contents of the class notice are approved.

### C. Identification of Members to be Noticed

Three issues pose a barrier to identifying which individuals should receive the Class Notice. First, Plaintiff does not currently know how many of the calls in Mobile Sphere's records were made for telemarketing purposes, and how many were made for purposes outside of the class definition, such as obtaining updated credit card information. (Pl.'s Mot. for Approval at 1-2.) To resolve this issue, Plaintiff proposes requiring Defendant to provide unredacted call records, which will reflect the particular campaign associated with each call, and cross-referencing that list with Mobile Sphere's records to weed out any recipients of only non-telemarketing calls. (*Id.*) Second, approximately 10% of the numbers are listed as "Landline," but do not otherwise have any information that would allow the parties to determine whether the numbers were associated with residential or business lines without individualized inquiry. (*Id.* at 3.) For those individuals, Plaintiff proposes sending a questionnaire-style affidavit asking "Was your phone number _____ a residential landline, or a cell phone number, in April and May of 2019? Yes____ No ____." (*Id.*) Defendant does not object to this procedure for the Landline customers.

The parties disagree, however, on how to resolve the third issue: at the time of class certification, it was unknown whether some of the "Mobile" numbers may actually have been landline numbers, since it is technically possible to have a landline service on a wireless network. (*Id.* at 2.) Each party proposes a separate solution.

### 1. Defendant's Proposed Notice Plan

Defendant proposes resolving this issue by using an opt-in affidavit asking potential class members to verify that they had either a residential landline or a cell phone number in April and May of 2019 for *all* of the 9,186 members, rather than only the Landline customers. (Def.'s Opp'n to Pl.'s Mot. [Doc. # 91] at 9.) Plaintiff maintains that Defendant's advocacy for the use of opt-in claim affidavits for the entire potential class is being proposed solely to limit its liability "based on Defendant's assumption that most class members won't go through the trouble of signing and returning an Affidavit claim form" because "claims-made class actions historically have low participation rates, with participation rates rarely exceeding 5-10%." (Pl.'s Mot. for Approval at 3.)

Defendant maintains that its own proposed procedure is the most consistent with the Court's order, which Defendant asserts "expressly adopted the use of a questionnaire." (Def.'s Opp'n at 4.) The Court's order stated:

> Plaintiff proposes resolving ambiguities by subpoena to the phone companies or obtaining information by a questionnaire or affidavit as part of the class notice process: "Was your phone number _____ a residential landline, or a cell phone number, in April and May of 2019? Yes__ No___." (Reply at 4-6, 9.) As the affidavit or questionnaire process has been approved by courts handling this very issue in TCPA class actions, the Court adopts it for this case. *See e.g.*, *Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) ("[I]f issues need to be tried to determine whether a line is a business line or a residential line, those issues could be resolved by asking class members whether the line in question is a residential line during the class notification process, or, in any event, through a standardized and efficient claims process at a later stage").

To the extent the parties contend that the order was unclear, the Court clarifies that it adopted Plaintiff's suggestion that an affidavit could be used *if needed*, but that its Order does not (1) preclude the Court from approving a different procedure that is equally efficient and responsive to concerns over administrative feasibility, or (2) specify that the affidavit will be used at the initial class notice stage, as opposed to using it for verifying class membership at the damages stage, should the case reach it.

5

As for the merits of Defendant's proposal, there is no requirement that the inquiry must be made at the class notification stage, and it is often not utilized until the damages stage, as Defendant's own cases reflect. *See, e.g., Braver v. Northstar Alarm Servs., LLC*, 329 F.R.D. 320, 329 (W.D. Okla. 2018) (approving use of individualized inquiry "during the class notification process, *or*, in any event, through a standardized and efficient claims process *at a later stage*.") (emphasis added); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 24 (E.D.N.Y. 2020) (using sworn affidavits to verify consumers who would be able to "collect damages" and noting that self-identifying affidavits are often used "to establish a class member's entitlement to recovery in class action litigation.") Courts generally adopt the procedure only where class members cannot otherwise be identified through Defendant's records, expert testimony, or other methods. *See Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *21 (N.D. Ill. Mar. 21, 2019), *amended in part*, No. 15 C 2980, 2020 WL 10963912 (N.D. Ill. July 2, 2020); ("[t]his discovery enables Plaintiffs to identify and send direct notice to a significant portion of the proposed class. *Others* may self-identify by submitting documentation that they received a call by VVT, such as a phone bill or affidavit.") (emphasis added); *Salam v. Lifewatch, Inc.*, No. 13 CV 9305, 2016 WL 8905321, at *2 (N.D. Ill. Sept. 6, 2016) (using self-identification only because the defendant did not have any data on the potential members of the proposed class to use for purposes of identification).

Defendant has shown no reason why an individualized affidavit procedure is needed at this point in the process, and as Plaintiff points out, in class actions that require affirmative self-identification, "claims rates are routinely below 10 percent and often well under 1 percent." *See* Elizabeth Cabraser and Andrew Pincus, *Claims-Made Class-Action Settlements*, Judicature (2015), https://judicature.duke.edu/articles/claims-made-class-action-settlements/. Requiring an individualized affidavit from each member before the claims process or summary judgment is a procedural bar not supported by either the Federal Rules

6

or case law. Courts have specifically rejected the premature use of the procedure as unfair to potential class members because it has the potential to "create an unjustified barrier to absentee class members' potential recovery" and "artificially and prematurely restrict [Defendant's] potential liability, and class members potential recovery, in advance of any determination on the merits." *Wesley v. Snap Fin., LLC*, 341 F.R.D. 72, 79 (D. Utah 2022). Even if individualized inquiry is eventually needed, at this stage any ambiguity over who should receive notice will be resolved in favor of sending notice to all 9,186 numbers that received a telemarketing call, even if that group later proves to have been overbroad, with the intent of narrowing the class later during the individualized claims process. *See Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 61 (D. Conn. 2001), *on reconsideration* (May 11, 2001) (sending individual notices to the "universe" of class members, although it was twenty-five percent over-inclusive, because it was not possible without individual inquiry to determine whether the debt at issue was commercial debt that would fall within the class definition or consumer debt, and such inquiry was not warranted at the notice stage).

The Court rejects Defendant's proposed plan.

### 2. Plaintiff's Proposed Notice Plan

Plaintiff asserts that the number of Mobile customers who actually had a cell number, as opposed to a wirelessly registered landline, can be resolved without individual inquiry. Plaintiff represents that based on publicly available data, he has independently verified that all customers listed as "Mobile" numbers had a cellular number at the time; he also represents that if Defendant questions the reliability of his process for verification, he is willing to subpoena the wireless carriers of those numbers once Defendant releases the unredacted class list with the full phone numbers that will allow him to do so. (*Id.*)

Plaintiff submits with his motion the declaration of Anya Verkhovskaya to support this proposition. As an initial matter, Plaintiff represents that he is not submitting Verkhovskaya's declaration as an expert declaration, because while she is "certainly an

expert in her field," her work "does not entail specialized knowledge that requires the use or qualification of an expert," and that "[a]nybody with the requisite Excel skillset" could do the same. (Pl.'s Reply [Doc. # 92] at 6.) This argument is unpersuasive. Verkhovskaya's declaration dedicates the first seventeen paragraphs to detailing her prior experience and work as an expert. (Declaration of Anya Verkhovskaya [Doc. # 89-2] at 5.) Her method for evaluating the data involved loading the publicly available source data into ".SQL staging tables," which is a programming language used to analyze mass structured datasets; in other words, the "requisite Excel skillset" that Plaintiff refers to is exactly what makes her an expert, because such skills and background knowledge are not of the sort that would be within the ken of an average person. (*Id.* at 5-6) As such, the Court views Verkhovskaya's declaration as an expert declaration.

Verkhovskaya states in her declaration that she reviewed the data from Mobile Sphere and cross referenced it against publicly available data from Interactive Marketing Solutions, a supplier of wireless identification products and services used by the FCC to determine when a phone number is registered to a wireless telephone. (Verkhovskaya Decl. [Doc. # 89-2] at 26-27.) Using the data and products from IMS, Verkhovskaya asserts that of the total 9,703 telephone calls placed by Mobile Sphere, there were 7,455 unique wireless telephone numbers that received 8,633 wireless telephone calls. (*Id*. at 39.) In order to use this information to generate a proposed class notice list, Plaintiff proposes (1) ordering Defendant to produce unredacted call records that will allow Plaintiff to identify the names, addresses, telephone numbers, and email addresses of the customers on the list, along with the identification of whether they received a telemarketing or non-telemarketing call; (2) to the extent Defendant objects to Plaintiff's method of identifying the wireless callers, issuing subpoenas to wireless carries for the Mobile number customers to confirm that they were assigned to a cellular service during the relevant time period, (3) cross-referencing the list of Mobile numbers with Defendant's unredacted call records to remove any numbers that

8

received only non-telemarketing numbers, and (4) issuing direct notice to that cross-referenced list of Mobile customers.

Defendant objects to Plaintiff's proposed method of identifying members to receive notice, arguing that the Court did not and should not approve further discovery such as subpoenas to wireless carriers or expert reports. (Def.'s Opp'n at 3-4.) It further asserts that "Plaintiff never designated any expert in this case" prior to the close of discovery, and that doing so "at the current procedural posture is improper, untimely, and unduly prejudicial to MSFW" because it "never had the opportunity to depose Plaintiff's expert or designate a rebuttal expert," and would have done so if it knew that expert determinations would be used to determine class membership. (Def.'s Opp'n at 7.) However, Rule 26's disclosure requirements govern disclosures of *testifying* experts; experts that provide opinions solely on the class notice process are not subject to disclosure, and the Court may consider their opinions if they are of assistance to the Court in establishing a class notice plan. *See Loef v. First Am. Title Ins. Co.,* 281 F.R.D. 58, 59 (D. Me. 2012) (rejecting the defendant's arguments that filing a declaration by a previously undisclosed expert opining on the class notice process was a discovery violation and considering her declaration in developing the class notice plan.)

Defendant also asserts that it has been prejudiced because for Verkhovskaya's declaration to be properly considered, the Court would have to re-open discovery to allow for it to depose Verkhovskaya, designate a rebuttal expert, and potentially engage in motion practice. The court in *Loef,* which accepted and considered the declaration of Plaintiff's class notice expert, did none of those things, and enlisting the assistance of third parties to help determine which individuals fall within the class definition for purposes of creating a class notice list *after* class certification is not unusual. *See Mazzei v. Money Store*, No. 01-CV-5694 (JGK), 2022 WL 2077970, at *2 (S.D.N.Y. June 9, 2022)*, reconsideration denied sub nom. Mazzei v. The Money Store*, No. 01-CV-5694 (JGK), 2022 WL 3155249 (S.D.N.Y. Aug. 5, 2022)

(after class certification, each side had experts who were ordered to meet and utilize documents produced by the defendants in order to identify and ascertain a list of class members for purposes of notice); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2021 WL 3929698, at *7 (E.D. Pa. Sept. 2, 2021) (certifying a class based on Plaintiff's proposal to issue subpoenas to third party companies and then utilizing a company called OnPoint Analytics to analyze the data and compile a list of customers fitting the class declaration); *Mohamed v. Off Lease Only, Inc.,* No. 15-CV-23352-CIV, 2018 WL 398326, at *1 (S.D. Fla. Jan. 12, 2018) (sending a list of phone numbers that received alleged text messages from InstantCarOffer.com after placing an advertisement for a car sale on Craigslist to Craigslist itself to "cross check" whether they were associated with a Craigslist advertisement).

Defendant raises the same argument against Plaintiff's proposal that any question as to the reliability of Verkhovskaya's declaration be resolved by issuing subpoenas to wireless carriers—essentially, that discovery is already closed, and that it will needlessly prolong the process. However, courts have repeatedly allowed for discovery for the narrow purpose of putting together a list of potential class members to be noticed or for purposes of evaluating who falls within the class. *Nnebe v. Daus,* No. 06-CV-4991 (RJS), 2022 WL 16840242, at *1 (S.D.N.Y. Oct. 14, 2022) (noting that it had allowed for "discovery with respect to communicating with class members" and "ordered Defendants to provide class counsel with all potential class members' names, email addresses, and last known mailing addresses" in order to disseminate the class notice); *Kloppel v. HomeDeliveryLink, Inc.,* No. 17-CV-6296-FPG, 2022 WL 1210484, at *1 (W.D.N.Y. Apr. 25, 2022) (noting that the sequence of events had been class certification and summary judgment motions, approval of a class notice, and *then* class discovery as to commonality); *Meredith v. United Collection Bureau, Inc.*, No. 1:16 CV 1102, 2019 WL 13150917, at *1 (N.D. Ohio June 18, 2019) (utilizing a period of "confirmatory discovery" to verify the number and identity of the class members).

In short, Defendant does not take issue with the content of Verkhovskaya's declaration or the reliability of the subpoena method—only with the timing of Plaintiff's proposal to use them. However, the issues of timing are with Defendant's opposition, not Plaintiff's proposal; Defendant has a due process right to challenge claims or putative class members, and by extension any method that Plaintiff uses to identify those class members, but it does not have a right to do so specifically at this stage so long as the Court provides it with that opportunity during the claims administration process if or when there is a judgment for the class. *See Wesley*, 341 F.R.D. at 78 (finding that determination of class membership and the process of challenging whether individual class members actually met the criteria for class membership was not required at the class notice stage, but could instead be reserved for claim administration after a judgment was entered.)

To resolve the conflict, the Court will proceed under the presumption that all Mobile customers had cell numbers based on Verkhovskaya's declaration and send them all notice once the dataset is cross-referenced with Defendant's unredacted data to remove the numbers that received only non-telemarketing calls. However, the Court also recognizes Defendant's right to engage in either expert discovery, require subpoenas to the wireless carriers to verify the data, or renew its request for the use of individual affidavits if or when the case proceeds to the claims process phase. This approach balances the interest in efficiently and expediently sending out the class notices while preserving Defendant's right to challenge the putative class members at a later stage in the litigation.

**D.   Class Website**

Plaintiff also proposes establishing a case website with the operative pleadings, Court Order certifying the class, the Class Notice, and the affidavit form, as well as a list of frequently asked questions, Class Counsel contact information, and the ability for Landline Customers to submit their affidavit forms online to confirm membership in the class. (*Id.* at 5.) The website URL would be on the Class Notice and in the email notices. (*Id.*) Defendant

11

has no objection, and so the Court approves use of a class website with all the information Plaintiff proposes, and that will allow for the Landline Customers to opt for electronic submission of their affidavit forms.

### E. Class Administrator

Plaintiff proposes the use of the Angeion Group as the Class Administrator to handle the issuance of Class Notice, the administration of the case-specific website, processing the Class Data, addressing returned mail, processing the affidavit forms submitted by Class Members, tracking exclusion requests, and all other ancillary tasks associated with class administration. (Pl.'s Mot. for Approval at 7-8.)

Defendant has no objection; the Court approves use of Angeion Group as Class Administrator.

### F. Scheduling

Plaintiff proposes 60 days to allow Wireless Class members to request exclusion, and for Landline Class members to claim membership by submitting the opt-in the Affidavit. (Pl.'s Mot. for Approval at 7.) Defendant has no objection, and so the Court approves a 60-day period to request exclusion.

## III. Conclusion

Plaintiff's motion to approve class notice form and procedures is granted with modification. All customers listed as Mobile numbers on the final joint Class Notice list will receive the Class Notice; for the 10% of individuals whose phone numbers are listed as Landlines, they will receive both Plaintiff's Class Notice and the affidavit form to confirm whether their landline was residential or commercial. Defendant will reserve its right to require confirmation that the mobile numbers actually belonged to wireless phones rather than landlines; the exact method of that obtaining that confirmation will be determined if this case progresses to the claim submission stage.

The Court orders the following:

1. Defendant shall produce the unredacted call records with the customers' names, addresses, telephone numbers, and identification of which type of call they received to Plaintiff for purposes of notice, under protective order to preserve customer privacy if need be, by April 6, 2023;

2. Plaintiff and Defendant will confer and coordinate to cross-reference the unredacted call records with Mobile Sphere's call records, remove any numbers associated only with non-telemarketing calls, and submit a joint proposed Class Notice list by April 24, 2023 for the Court's final approval;

3. Also by April 24, 2023, Plaintiff shall submit a modified Class Notice with the Claim Administrator's contact information and website added for the Court's final approval;

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 23rd day of March, 2023